*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0382P (6th Cir.)
File Name: 01a0382p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: GORDON SEL-WAY,
INC.,

                  *Debtor.*

_____

GORDON SEL-WAY, INC.,
              *Appellant,*

    *v.*

UNITED STATES OF AMERICA,
              *Appellee.*

No. 99-2203

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 98-60512—George C. Steeh, District Judge.

Argued: December 8, 2000

Decided and Filed: October 26, 2001

Before: JONES, BOGGS, and SILER, Circuit Judges.

1

---

**COUNSEL**

---

**ARGUED:** Kevin M. Ball, FITZGERALD & DAKMAK, Detroit, Michigan, for Appellant. Joel L. McElvain, UNITED STATES DEPARTMENT OF JUSTICE, TAX DIVISION, APPELLATE SECTION, Washington, D.C., for Appellee. **ON BRIEF:** Kevin M. Ball, Stuart J. Snider, Robert A. Peurach, FITZGERALD & DAKMAK, Detroit, Michigan, for Appellant. Joel L. McElvain, Bruce R. Ellisen, UNITED STATES DEPARTMENT OF JUSTICE, TAX DIVISION, APPELLATE SECTION, Washington, D.C., for Appellee.

---

**OPINION**

---

NATHANIEL R. JONES, Circuit Judge. On December 22, 1993, Chapter 11 debtor, Gordon Sel-Way, Inc. ("Sel-Way") filed a claim for a federal tax refund in bankruptcy court. While the government acknowledged that Sel-Way was entitled to a refund, it refused to pay on the grounds that Sel-Way owed it money for past tax penalties. The bankruptcy court held that the government was not entitled to set off the tax refund against Sel-Way's prior debts because the government's claims arose prior to Sel-Way's filing of the bankruptcy petition and Sel-Way's refund claim arose post-petition. The government appealed this decision to the United States District Court for the Eastern District of Michigan, where it argued that the bankruptcy court did not have jurisdiction over this case, and that it was entitled to a setoff. The district court held that the bankruptcy court had jurisdiction and that the government was entitled to a setoff. For the reasons stated below, we **AFFIRM** the district court's decision.

off its claim for a pro-rata share of the distribution against Sel-Way's claims for tax refunds would not undermine the integrity of the plan of reorganization. It will merely allow the government to obtain the same treatment as other class 5 creditors. Accordingly, we find that Sel-Way's manipulation of the plan of reorganization (whether intentional or not) gave the government a post-petition claim against Sel-Way for a pro-rata share of the amount that was distributed to the other class 5 creditors. Since this claim arose post-petition, it may be set off against Sel-Way's post-petition claim for tax refunds.

**C. Equities**

Once the prerequisites for establishing a setoff claim are established, the court generally looks to the equities in order to determine if the setoff should be allowed. *See DuVoisin v. Foster* (*In re Southern Indus. Banking Corp.*)*, 809 F.2d 329, 332 (6th Cir. 1987) ("when justice dictates, setoff must be denied"). As noted above, Sel-Way failed to protect the government's class 5 unsecured claims despite an indication that the bankruptcy court's subordination order might be overturned. At this point, the government is merely attempting to receive its fair share of the class 5 distribution. Thus, we find that the district court did not abuse its discretion in finding that the equities favor setoff.

**IV. Conclusion**

For the reasons stated above, we **AFFIRM** the district court's judgment in this case.

maintain mutuality. In this case, this consideration does not apply. The government's original tax penalty claims undisputedly arose against Sel-Way as itself (before it became a debtor-in-possession). On the other hand, Sel-Way's claim for a tax refund arose after the confirmation of the plan and after Sel-Way's status as debtor-in-possession had already expired. Therefore there is no mutuality problem in this case.

Regarding the second rationale of maintaining the integrity of the plan of reorganization, we recognize that allowing any pre-petition debts to be converted into post-petition debts at confirmation creates the danger that pre-petition creditors will use setoff to gain priority over other pre-petition creditors with superior claims. However, we are not convinced that allowing a creditor to assert a post-petition claim based on the debtor's failure to protect the integrity of the plan of reorganization presents the same danger. To the contrary, in such cases setoff may be necessary in order to vindicate the plan of reorganization and ensure that creditors of the same stature are treated equally.

In this case, the bankruptcy court initially subordinated the government's tax penalty claims against Sel-Way. However, in doing so, the bankruptcy court specifically noted that the Supreme Court had granted certiorari to review *Noland,* a case whose outcome might require the reversal of the bankruptcy court's subordination decision. Despite this warning, Sel-Way quickly distributed its liquidated assets to other class 5 creditors without setting aside any assets to pay the government in the event that the subordination decision was overturned. Each class 5 creditor received a 20 % pro rata share of their unsecured claims. When the subordination decision was overturned, Sel-Way did not have any assets to pay the government its 20% share, which totaled $96,586.

As the government points out, Sel-Way's hasty distribution of the assets undermined the plan of reorganization by creating a situation in which the government was treated worse than other creditors of the same stature. Given these facts, we are convinced that allowing the government to set

## I. Facts

On July 1, 1988, Sel-Way, which was in the excavation business, filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. The appellant's plan of liquidation and reorganization was confirmed by the bankruptcy court on July 15, 1991. The Plan provided for the liquidation of all of Sel-Way's assets, after which it would not continue doing business. The Plan did not provide for a discharge of Sel-Way's debt.

Sel-Way's pre-petition debts included unpaid unemployment tax ("FUTA") penalties owed to the IRS. Under the Plan, the government's tax penalty claims were treated as class 5 general unsecured claims. As such, these claims were to be paid off after the full payment of the expenses of administration, priority union fringe benefit fund claims, and secured and priority tax claims.

On March 31, 1992, Sel-Way paid its Michigan unemployment taxes for 1987 and 1989, and thereby became entitled to FUTA refunds. On August 17, 1994 the bankruptcy court found that Sel-Way was entitled to FUTA tax refunds for the years 1987 and 1989, in the amounts of $54,538.28 and $35,699,87, respectively ($90,238.15 in total). In the meantime, Sel-Way also filed an adversary complaint against the IRS to subordinate the government's class 5 unsecured tax penalty claims mentioned above. Citing the Sixth Circuit's decision in *United States v. Noland* (*In re First Truck Lines*), 48 F.3d 210 (6th Cir. 1995), the bankruptcy court granted the motion. The government appealed this decision to the district court. While this appeal was pending, Sel-Way liquidated all of its assets (except for the FUTA tax refund) and disbursed the liquidation in a manner consistent with the confirmed plan as amended by the bankruptcy court's order allowing Sel-Way to subordinate the government's tax penalty claims.

On May 13, 1996, the Supreme Court issued its opinion in *United States v. Noland*, 517 U.S. 535 (1996), overruling the Sixth Circuit's disposition. Based on the Supreme Court's

opinion, the district court remanded this case to the bankruptcy court for further review. After considering *Noland*, the bankruptcy court reversed its prior order granting subordination of the government's claims and restored those claims to the status of general unsecured claims. Thus, the government once again became entitled to a pro-rata share of the monies that were distributed to all unsecured claims. However, by this point Sel-Way had already disbursed all of the liquidated assets in reliance on the bankruptcy court's initial decision to subordinate certain government claims. Consequently, the IRS tax penalty claims that had been temporarily subordinated were not paid. Also left unpaid were administrative expenses in the form of attorney's and accountant's fees totaling approximately $80,000 which were entitled to first priority of distribution under the Plan.

Once the subordination issue was resolved in favor of the IRS, the bankruptcy court proceeded to address Sel-Way's claim for its FUTA tax refund and the government's claim that it should be able to setoff this refund against the amount of money that it would have received had it been given a pro-rata share of the monies distributed to all other unsecured claims. On September 11, 1998, the bankruptcy court found that the government's claim arose prior to Sel-Way's petition for bankruptcy and that Sel-Way's FUTA tax refund claims arose in 1994 after the petition. The bankruptcy court concluded that the since the government's claim arose pre-petition it could not be set off against Sel-Way's post-petition claim.

The government appealed this decision to the United States District Court for the Eastern District of Michigan. On appeal, the government asserted that the bankruptcy court lacked jurisdiction over this case. Specifically, it argued that Sel-Way's refund claim was barred by the doctrine of sovereign immunity and that the bankruptcy court lacked subject matter jurisdiction over this post-petition matter. In addition, the government argued that the bankruptcy court erred by refusing to grant it a setoff.

The first rationale for the prohibition on setoff of pre-petition and post-petition debts is to ensure mutuality. In Chapter 11 bankruptcy, the debtor files a petition for bankruptcy, becomes a debtor-in-possession, and thus succeeds to a set of statutorily defined powers and duties. The debtor-in-possession is considered to be a separate legal entity from the debtor himself. Since the debtor and the debtor-in-possession are separate legal persons, there is no mutuality between a creditor's pre-petition claim against a debtor and a debtor-in-possession's post-petition claim against a creditor. *See Fordson Eng'g Corp. v. General Motors Corp.* (*In re Fordson Eng'g Corp.*), 25 B.R. 506, 511 (E.D. Mich.1982) ("for the reason that the debtor in possession is an entity different and distinct from the debtor itself, a post-petition debt can not be set off against a pre-petition claim"); *see also Virginia Block Co. v. Virginia Mut. Ins. Agency, Inc.* (*In re Virginia Block Co.*), 16 B.R. 771, 775 (Bankr. W.D. Va. 1982).

A second explanation for why pre-petition claims may not be setoff against post-petition claims is that doing so might frustrate the plan of reorganization. For example, allowing a creditor to set off its discharged pre-petition claim against the debtor's post-petition claim would effectively revive discharged debts and prevent the debtor from making a fresh start. In addition, allowing creditors to set off their pre-petition claims against the debtor's post-petition claim might enable creditors to circumvent the plan of reorganization by collecting ahead of creditors who were assigned a higher priority in the plan of reorganization. *See United States v. Norton*, 717 F.2d 767, 774 (3rd Cir. 1983) ("To allow the IRS to retain their overpayment as extra security on the debt would seriously compromise the powers of the Bankruptcy Court, the capacity of debtors to rehabilitate, and the equitable distribution that the Bankruptcy Code is designed to foster.").

## B. Analysis

As noted above, the first rationale for barring the setoff of pre-petition claims against post-petition claims is the need to

integrated into the post-petition plan of reorganization.[8] Alternatively, the government argues that its pre-petition claim was converted into a post-petition claim when Sel-Way breached its obligations under the plan by distributing all of its liquidated assets and failing to ensure that the government received its fair share of the class 5 distribution.

Given the paucity of case law addressing the government's arguments, we turn to the rationale underlying the prohibition against setoff of pre-petition claims against post-petition claims to determine whether the government has a valid post-petition claim.

## A.  Background

The right to setoff is a widely recognized common law right which allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding "the absurdity of making A pay B when B owes A." *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995) (internal quotation omitted). Although the Bankruptcy Code does not provide an explicit right to setoff, the common law right is  generally preserved in bankruptcy. *Id*. at 18.  However, bankruptcy courts have placed some limitations on this right.   One limitation that courts have frequently recognized is that obligations that arise pre-petition may not be setoff against countervailing obligations that arise post-petition.   There seem to be two rationales for this limitation.

---

[8] In support of this argument,  the government cites *In re Seal*, 192 B.R. 442 (Bankr. W.D. Mich. 1996).  In *Seal*, a Chapter 13 debtor who owed  a creditor for a debt that arose pre-petition moved to collect damages that arose as a result of the  creditor's willful violation of an automatic stay.  The court held that although the debtor's obligation to the creditor originally arose pre-petition, it was converted into a separate post-petition debt upon the confirmation of the Chapter 13 plan.  The court concluded since this debt was post-petition it could be set off against the damages that arose from the creditor's violation of the automatic stay, which arose post-petition.  *Id*. at 457.

---

On August 31, 1999, the district court held that the bankruptcy court properly exercised jurisdiction over Sel-Way's claim.  However, it reversed the bankruptcy court's decision regarding setoff.   The court found that upon confirmation of the appellant's plan of liquidation and reorganization, the government's pre-petition claim was converted to a post-petition claim.  The court reasoned that since Sel-Way's FUTA tax refund claim also arose post-petition, the parties' claims could be set off against one another. Sel-Way now appeals the district court's decision to this Court.

## II.  Jurisdiction of the Bankruptcy Court

On appeal, the government argues that the district court erred when it held that the bankruptcy court had jurisdiction over this case.  Since the jurisdictional issue is necessarily antecedent to any determination of the merits, we will address it   first.   In doing so, we review the district court's jurisdictional determinations *de novo*. *Michigan Employment Sec. Comm'n v. Wolverine Radio Co.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1138 (6th Cir. 1991).

## A.  Sovereign Immunity

The terms under which the United States waives sovereign immunity against suit in bankruptcy court are specified in 11 U.S.C. § 106 (a), (b), and (c).[1]

---

[1] 11 U.S.C. § 106 states:
(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
  (1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title. . . .
(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose

**1. Section 106(a)**

Section 106(a) waives the government's sovereign immunity with respect to proceedings listed in certain provisions of the bankruptcy code. One of these provisions is 11 U.S.C. § 505, which relates to the determination of tax liabilities. Section 505(b) states:

A trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case by submitting a tax return for such tax and a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax.

11 U.S.C. 505(b). As noted above, the district court found that since Sel-Way properly brought its refund claim under this section, the government had waived sovereign immunity.

On appeal, the government emphasizes that the language of section 505 states that a "trustee" acting on behalf of the estate may obtain a tax refund in bankruptcy court. The government concludes that since Sel-Way is not a trustee acting on behalf of the estate, Sel-Way did not establish jurisdiction in the bankruptcy court under § 505. We are not entirely persuaded by this argument.

First, the government's argument that section 505(b) is restricted to trustees seems inconsistent with the broad language of §505(a), which allows the bankruptcy court to determine

the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not

out of the same transaction or occurrence out of which the claim of such governmental unit arose.
(c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

---

post-confirmation jurisdiction over this matter. Thus, we turn to the merits of the case.

### III. Setoff

As noted above, the government filed pre-petition claims against Sel-Way for its failure to pay tax penalties. These claims were integrated into the confirmation plan and given class 5 priority of general unsecured claims. After the plan was confirmed and Sel-Way's debtor-in-possession status had expired, Sel-Way paid its Michigan taxes and acquired a claim for refund of overpaid FUTA taxes from the government. The district court held that the government was entitled to set off its obligation to refund Sel-Way's overpaid taxes against Sel-Way's obligations to it under the confirmed plan. We review the district court's legal decisions *de novo*. *Canadian Pac. Forest Products Ltd. v. Irving, Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436, 1440 (6th Cir. 1995). The court's equitable determinations are reviewed for abuse of discretion. *Official Comm. of Unsecured Creditors v. Mfrs. & Traders Trust Co.* (*In re Bennett Funding Group, Inc.*), 146 F.3d 136, 140 (2d Cir.1998).

On appeal, Sel-Way argues that the government is not entitled to setoff because Sel-Way's post-petition claim cannot be setoff against the government's pre-petition claim. In contrast, the government argues that the setoff was permissible because both its claim against Sel-Way and Sel-Way's refund claim against it are post-petition claims.[7] Specifically, the government argues that although its claim against Sel-Way was initially a pre-petition claim, this claim was converted into a post-petition claim when it was

---

[7] Several courts have recognized the right to set off post-petition debts. *See United States v. Maxwell*, 157 F.3d 1099, 1102 (7th Cir. 1998); *Palm Beach County Bd. of Pub. Instruction v. Alfar Dairy, Inc. (In re Alfar Dairy, Inc.)*, 458 F.2d 1258, 1262 (5th Cir.), *cert. denied*, 409 U.S. 1048 (1972); *Fordson Eng'g Corp. v. General Motors Corp. (In re Fordson Eng'g Corp.)*, 25 B.R. 506, 511 (Bankr. E.D. Mich. 1982); *Framingham Winery, Inc. v. J.A.G., Inc. (In re J.A.G., Inc.)*, 7 B.R. 624, 628 (Bankr. D. Mass. 1980).

In fact, several courts have held that 11 U.S.C. § 1142 provides bankruptcy courts with broad power to enforce the terms of a confirmed plan.  *See, e.g., In re Terracor*, 86 B.R. 671, 676 (D. Utah 1988); *In re Beta Int'l, Inc*., 210 B.R. 279, 284 (E.D. Mich. 1996).  Section 1142(b) states:

> The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution of delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. § 1142(b).

Under this line of cases, the bankruptcy court would clearly have jurisdiction over this case since the bankruptcy court's resolution of Sel-Way's tax claim and the government's right to setoff is necessary to hasten the consummation of the plan. As the district court has pointed out, the resolution of Sel-Way's tax refund claim against the government would either allow the debtor to fulfill its obligations to pay for administrative expenses or to pay the government's class 5 unsecured claims.

Second, assuming that the bankruptcy court's post-confirmation jurisdiction is limited to the plan of reorganization, we believe that Sel-Way's plan provides for post-confirmation jurisdiction in this case.  While it is true that Sel-Way's plan of reorganization provides that the bankruptcy court "shall retain jurisdiction to hear and determine any controversy pending as of the date of confirmation" this provision is not exclusive.  The plan also stipulates that " the [c]ourt shall further retain jurisdiction to . . . hear and determine all controversies relating to obligations of the Debtor incurred in the conduct of Sel-Way prior to confirmation."  J.A. at 86.  Given that the present controversy clearly relates to Sel-Way's federal tax penalties that arose prior to confirmation and payment, we believe that the plan of reorganization provides the bankruptcy court with

previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

11 U.S.C. § 505(a).  In addition, the legislative history indicates that § 505 was not intended to restrict the bankruptcy court jurisdiction to claims of  trustees over property of the estate.  Rather, it "authorizes the bankruptcy court to rule on the merits of *any tax claim* involving an unpaid tax, fine, or penalty relating to a tax, or any addition to a tax, of *the debtor or the estate*."  124 Cong. Rec. H 11110 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards introducing the House amendments) (emphasis added), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6436, 6490.

Moreover, at least one circuit has held that § 505 is not restricted solely to claims brought by trustees.  *See IRS v. Luongo* (*In re Constance Luongo*), 259 F.3d 323, 328-29 (5th Cir. 2001).  Similarly, several other courts have rejected attempts to restrict the use of other bankruptcy provisions to trustees.  For example, in *Fleet Bank of Massachusetts, N.A. v. Tierney, Kalis & Lucas* (*In re Patriot Illinois Corp.*), 181 B.R. 56, 59 (Bankr. C.D. Ill. 1994) and *Winston & Strawn v. Kelly* (*In re Churchfileld Mgmt. & Inv. Corp.*), 122 B.R. 76, 79-80 (Bankr. N.D. Ill. 1990), bankruptcy courts allowed successors-in-interest and assignees to bring actions under §§ 544, 547 even though these provisions only mention trustees.  Thus, the legislative history and court precedent strongly suggests that section 505(b) is not restricted to trustees and that the government waived sovereign immunity in this case.

### 2.  Section 106(b)

Furthermore, assuming *arguendo* that Congress' abrogation of sovereign immunity in section 106(a) does not apply to section 505(b)  claims brought by non-trustees, we find that the government  waived sovereign immunity pursuant to 11 U.S.C. § 106(b).

Section 106(b) states that

> A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

11 U.SC. § 106(b). Accordingly, when the government files a proof of claim against the debtor, the debtor may bring a counterclaim against the government if (1) the property that the debtor claims is  the property of the estate and (2) the debtor's claim arises out of the same transaction or occurrence as the government's claim. *Id.*

In this case, the government filed a proof of claim against Sel-Way as debtor-in-possession to recover unemployment tax penalties for the years 1987, 1988, 1989, and 1990. The government acquired an unsecured claim for tax penalties in the amount of $482,931.42. On September 31, 1992, Sel-Way paid its Michigan unemployment taxes for the 1987 and 1989 tax years. This payment decreased Sel-Way's federal tax liability for 1987 and 1989, and made Sel-Way eligible for a $54,538 refund for 1987 and a $35,700 refund for 1989. Given these facts, the government's claim for unpaid taxes constitutes a waiver of sovereign immunity with regard to Sel-Way's claim for  FUTA taxes if (1) the FUTA refunds are property of the estate, and (2) Sel-Way's  FUTA refund claim arises out of the same transaction or occurrence as the government's tax penalty claim.

### a)  Property of the Estate

As noted above, the first step in determining whether the government's claim constitutes a waiver of sovereign immunity with regard to a debtor's counterclaim is whether the debtor's claim is property of the estate. In its briefs, the government points out that Sel-Way's plan of reorganization stipulates that the property of the estate reverts to Sel-Way upon confirmation. J.A. at 86. According to the government,

that the bankruptcy court did have core subject matter jurisdiction over this case.[6]

### b)  Post-Confirmation Jurisdiction

Nonetheless, the government contends that in a Chapter 11 proceeding, the bankruptcy court may not exercise post-confirmation jurisdiction unless such jurisdiction is "provided [for] in the plan of reorganization." *See Hosp. & Univ. Property Damage Claimants v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 7 F.3d 32, 34 (2d Cir. 1993). The government argues that since Sel-Way's plan of reorganization only provides jurisdiction over controversies "pending as of the date of confirmation" it does not have jurisdiction over Sel-Way's tax refund claim, which arose after confirmation. This argument has two important weaknesses.

First, although it is true that some courts have restricted the bankruptcy court's jurisdiction to the plan of reorganization, this practice has been explicitly rejected by others. *See Refrigerant Reclamation Corp. of Am. v. Todack* (*In re Refrigerant Reclamation Corp. of Am.*), 186 B.R. 78, 82 (Bankr. M.D. Tenn. 1995) (citing Frank R. Kennedy & Gerald K. Smith, *Postconfirmation Issues: The Effects of Confirmation and Postconfirmation Proceedings*, 44 S.C. L. Rev. 621, 632-34 (1993)) ("[S]ince the confirmation of a plan in a Chapter 11 case does not terminate a case, there should be no change in basic jurisdiction of the court . . . .").

---

[6]Furthermore, even if the bankruptcy court does not have subject matter jurisdiction over this case as a "core proceeding," we believe that it has "related to" jurisdiction over Sel-Way's claim pursuant to 28 U.S.C. § 1334(b). 28 U.S.C. § 1334(b) grants district courts concurrent and original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." In turn, 28 U.S.C. §157(a) allows that "each [d]istrict [c]ourt may provide that any and all cases under title 11 and any and all proceedings arising under title 11 or arising in a related case under title 11 shall be referred to the bankruptcy judges for the [d]istrict.

U.S.C. § 157(b)(1) ("Bankruptcy Judges may hear and determine . . . all core proceedings arising under title 11."). The Bankruptcy Code sets forth a non-exclusive list of core proceedings.[5] This list includes proceedings which affect the adjustment of the debtor-creditor relationship. 28 U.S.C. § 157(b)(2)(O).

The resolution of this proceeding clearly affects the adjustment of the debtor-creditor relationship. As noted above, the adjudication of Sel-Way's tax refund claim and the government's right to setoff will determine Sel-Way and the government's rights vis-a-vis one another. Thus it is clear

---

[5] 28 U.S.C. § 157(b)(2) provides:
Core proceedings include, but are not limited to--
(A) matters concerning the administration of the estate;
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

Sel-Way's tax refund cannot be the property of the estate since the refund claim arose after confirmation, at a point in time when the estate had ceased to exist.

Although the government's approach has a certain linguistic appeal, it has been criticized for creating arbitrary distinctions between pre-confirmation and post-confirmation property. For example, in *Price v. United States* (*In re Theodore R. Price*), 130 B.R. 259, 260-61 (N.D. Ill. 1991), a Chapter 13 debtor filed a claim for attorney's fees that he incurred while defending against the government's suit for back taxes in a federal court. As in this case, the government argued that since the claim for attorney's fees arose after the confirmation of the reorganization plan and the dissolution of the bankruptcy estate, the claim was not property of the estate. The district court rejected this argument. *Id*. at 269. The court pointed out that since the Chapter 13 debtor remained obligated to use post-confirmation property to fulfill the obligations of the plan of reorganization, there was no reason to distinguish between post-confirmation property and the property of the estate. It stated: "[p]lainly there is no firm line which divides the property of the debtor and property of the estate once a Chapter 13 plan has been confirmed. Rather, the two must be treated as one and the same, at least to the extent that the debtor's post-confirmation income or other property is committed to implementation of the plan." *Id*. This decision was affirmed by the Seventh Circuit. *Price v. United States* (*In re Theodore R. Price*), 42 F.3d 1068, 1072 (7th Cir. 1994).

Although there may be some situations in which distinguishing post-petition property from the property of the estate might help maintain the integrity of the plan of reorganization, we agree with *Price* court's holding that where the debtor does not obtain a discharge and post-confirmation property is committed to the plan of reorganization, it would be arbitrary to exclude post-petition

property from the property of the estate.[2]    Given that Sel-Way's Chapter 11 liquidation and reorganization plan does not provide for a discharge and the Plan obligates Sel-Way to use post-confirmation property to fulfill the plan of reorganization, we find that the tax refund claim, although pos-petition property should be considered as property of the estate. Accordingly, we hold that Sel-Way's claim for FUTA tax refunds is property of the estate for the purposes of determining jurisdiction under section 106(b).

### b)  Same Transaction or Occurrence

Pursuant to section 106(b), the second test for waiver of sovereign immunity is whether the  debtor's claim arises out of the "same transaction or occurrence" as the government's claim.  Since the "same transaction" language was borrowed from Rule 13 of the Federal Rules of Civil Procedure, courts have routinely relied on Rule 13 jurisprudence in interpreting 106(b).[3]   Based on this reliance, several courts have held that like Rule 13, section 106(b)'s "transaction or occurrence" language should be interpreted liberally. *See, e.g., Burlington N. R.R. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990) ("[W]e have stressed that our inquiry cannot be a 'wooden application of the common  transaction label.'") (citations omitted). Rather, a transaction "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *United States v. Southern Constr. Co.*, 293

---

[2]For example,  when the plan of reorganization provides for a discharge of debt, a distinction between the property of the estate, which is subject to a plan of reorganization, and  post-confirmation property, which is not, may be necessary to allow the debtor to make a fresh start.

[3]Rule 13 (a) provides, in relevant part:
A pleading shall state as a counterclaim any claim which at the time of serving the pleading  the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. FED. R. CIV. P. 13(a).

F.2d 493, 500 (6th Cir. 1961), *rev'd in part on other grounds*, 371 U.S. 57, 83 (1962) (internal quotation omitted).

In this case, the parties' claims both arise out of the debtor's tax liability.  The government's claim for tax penalties arises out of Sel-Way's failure to pay taxes in 1987 and 1989.  Sel-Way's claim for a FUTA refund arises out of its eventual payment of his 1987 and 1989 federal taxes and its subsequent payment of Michigan unemployment taxes for 1987 and 1989.  Although it is true that the parties' claims did not arise at the same moment,  there is clearly a logical relationship between the claims, since they are both proceed from Sel-Way's tax liability for 1987 and 1989.[4]

As such, we find that Sel-Way has met both tests for the waiver of sovereign immunity under section 106(b) and that therefore the government's claim against Sel-Way constituted a waiver of sovereign immunity with regard to Sel-Way's tax refund claim.

### 3.  Subject Matter Jurisdiction

The government also argues that the bankruptcy court should not have adjudicated this case because it did not have subject matter jurisdiction.

### a)  Core  Jurisdiction

Section 157(b)(1) confers jurisdiction on bankruptcy judges to hear all "core proceedings" arising under Title 11.  28

---

[4]In *Price v. United States* (*In re Theodore R. Price*), 42 F.3d 1068 (7th Cir. 1994), the Seventh Circuit addressed the question of whether the IRS's claim for unpaid taxes and the debtor's claim for attorney's fees incurred in an attempt to defend against the government's claim arose out of the same "transaction and occurrence" under section 106.  Although the government's claim arose out of the debtor's tax liability and the debtor's claim arose much later as a result of the government's attempt to collect taxes, the court held that these claims arose out of the "same transaction or occurrence" under section 106 because the claims were "logically related." *Id.* at 1073-74.