PER CURIAM.
Debtors Stephen J. Linsenmeyer and Jan M. Linsenmeyer appeal the bankruptcy court’s ruling that the taxable gain arising from a certain stock sale was attributable to them and not their bankruptcy estate. We affirm.
BACKGROUND
The Linsenmeyers filed a Chapter 11 bankruptcy petition in January 1989. In February 1989, the Linsenmeyers as debtors-in-possession entered into a settlement agreement in an adversary proceeding with Monroe Bank & Trust (“MBT”) and Ohio Citizens Bank. The bankruptcy court approved the settlement in March 1989. The settlement agreement provided, among other things, that (1) MBT would lend the Linsenmeyers approximately $1.8 million to be used to fund the Chapter 11 plan, (2) the Linsenmeyers’ shares in MBT would serve as partial collateral for the *102 loan, and (3) MBT could foreclose on the stock if the Linsenmeyers defaulted. The Linsenmeyers also agreed to “execute a consent order for automatic relief from stay for all collateral in the event payment is not received” on time.
Five months later, in August 1989, the bankruptcy court confirmed the Second Amended Plan of Reorganization (the “Plan”). The Plan incorporated the earlier order approving settlement of the adversary proceeding. Article VII of the Plan provided that “[a]ll property of the Debtors shall revert to the Debtors upon the effective date of this Plan, and their business shall thereafter be conducted by the Debtors, and not be Debtors-In-Possession.” This language tracks the language of 11 U.S.C. § 1141(b), which provides that all estate property reverts to the debtors upon the effective date of the plan of reorganization. The Plan became effective on September 8,1989.
The Linsenmeyers missed the due date for repaying the MBT loan and, in accordance with the settlement agreement, asked for and were granted a two-month extension. They missed that deadline as well, however, so the bank sold the stock in January 1990. The Linsenmeyers reported the income from that sale on their individual income tax returns for 1990. They have yet to pay the tax.
In May 2000 the Linsenmeyers moved the bankruptcy court to reopen the case and to appoint a trustee to file an amended tax return for the Chapter 11 estate for 1990. The bankruptcy court denied their motion and the district court affirmed.
STANDARD OF REVIEW
In a bankruptcy appeal, we “review the bankruptcy court’s decision rather than the district court’s review of the bankruptcy court’s decision.” Barlow v. M.J. Waterman & Assocs., Inc. (In re M.J. Waterman & Assocs., Inc.), 227 F.3d 604, 607 (6th Cir.2000). The bankruptcy court’s factual findings are reviewed for clear error and its conclusions of law are reviewed de novo. In re Eagle-Picher Indus., Inc., 285 F.3d 522, 527 (6th Cir. 2002).
DISCUSSION
Filing a petition in bankruptcy creates a bankruptcy estate, which is deemed to possess “all legal or equitable interests of the debtor in property as of the commencement of the case.” 11 U.S.C. § 541(a)(1). The bankruptcy estate also includes “[a]ny interest in property that the estate acquires after the commencement of the case.” 11 U.S.C. § 541(a)(7). Where the debtor is an individual who files a petition under Chapter 7 or 11, the bankruptcy estate is a separate taxpayer. I.R.C. § 1398.
In a Chapter 11 case, upon confirmation of a plan of reorganization, the property of the estate vests in the debtor and the estate terminates — that is, unless the plan provides otherwise. 11 U.S.C. § 1141(b)(“Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.”); see also In re Chattanooga Wholesale Antiques, Inc., 930 F.2d 458, 462 (6th Cir. 1991). The bankruptcy court retains jurisdiction to ensure that the plan is followed, however. See In re Gordon Sel-Way, Inc., 270 F.3d 280, 288-89 (6th Cir.2001).
In the instant appeal, the Plan became effective on September 8, 1989. As both parties agree, the Plan is to be construed as a contract, Hillis Motors, Inc. v. Haw. Auto. Dealers’ Ass’n, 997 F.2d 581, 588 (9th Cir.l993)(“A reorganization plan resembles a consent decree and therefore, should be construed basically as a con *103 tract.”), and under Michigan contract law extrinsic evidence is relevant only if the terms of the contract are ambiguous. Mich. Nat’l Bank v. Laskowski, 228 Mich.App. 710, 580 N.W.2d 8, 10 (1998)(“When two parties have entered in to a written contract and have expressed their intention that the writing constitute the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.”). Given the unmistakable language of Article VII (“All property of the Debtors shall revert to the Debtors upon the effective date of the Plan .... ”), and the equally unmistakable language of 11 U.S.C. § 1141(b)(“Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.”), the Plan is unambiguous as a matter of law. We need look no further than the language of Article VII.
The Linsenmeyers’ attempt to avoid the plain language of the Plan is predicated on their interpretation of certain provisions of the settlement agreement executed in February 1989, which settled the adversary proceeding. As explained above, however, such extrinsic evidence is of no relevance where, as here, the contractual language is plain.
Also, the Linsenmeyers argue that the bankruptcy court’s entry of an “Order Granting Relief from Stay to Monroe Bank & Trust” in December 1989, after the Linsenmeyers had twice defaulted on their loan, demonstrates that the bankruptcy estate was still in existence at that point, and that the MBT stock was still part of the bankruptcy estate. This argument is meritless. The order granting relief from stay appears to have been agreed to by the parties to the Settlement Agreement, which preceded the Chapter 11 Plan and was incorporated into it. It is not clear from the record why the bankruptcy court entered the order; it is clear from this record, however, that the order was neither necessary to permit the bank to sell the shares nor effective to alter the express terms of the Plan.
Pursuant to the Plan and § 1141(b), the estate property reverted to the Linsenmeyers upon the effective date of the Plan. Because the stock was sold after the effective date of the Plan, the resulting tax liability is upon the Linsenmeyers.
AFFIRMED.