RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0128p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

INDIAN HARBOR INSURANCE COMPANY,

*Plaintiff-Appellee*,

*v.*

CLIFFORD ZUCKER (16-1695), in his capacity as Liquidation Trustee for the Liquidation Trust of Capitol Bancorp Ltd. and Financial Commerce Corporation; JOSEPH REID (16-1697); CRISTIN K. REID and BRIAN K. ENGLISH (16-1698),

*Defendants-Appellants*.

Nos. 16-1695/1697/1698

———————

Appeal from the United States District Court for
the Western District of Michigan at Grand Rapids.
No. 1:14-cv-01017—Janet T. Neff, District Judge.

Argued: March 8, 2017

Decided and Filed: June 20, 2017

Before: DAUGHTREY, SUTTON, and DONALD, Circuit Judges.

———————

## COUNSEL

**ARGUED:** Sheldon L. Solow, KAYE SCHOLER LLP, Chicago, Illinois, for Appellant in 16-1695. Leslie S. Ahari, CLYDE & CO US LLP, Washington, D.C., for Appellee. **ON BRIEF:** Sheldon L. Solow, Jason J. Ben, Elise A. Neveau, KAYE SCHOLER LLP, Chicago, Illinois, for Appellant in 16-1695. Sharon M. Woods, Dennis M. Barnes, Josh J. Moss, BARRIS, SOTT, DENN & DRIKER, PLLC, Detroit, Michigan, for Appellants in 16-1697 and 16-1698. Leslie S. Ahari, TROUTMAN SANDERS LLP, Tysons Corner, Virginia, M. Addison Draper, TROUTMAN SANDERS LLP, Atlanta, Georgia, for Appellee.

  SUTTON, J., delivered the opinion of the court in which DAUGHTREY, J., joined. DONALD, J. (pp. 9–14), delivered a separate dissenting opinion.

_____

**OPINION**

_____

SUTTON, Circuit Judge.   Capitol Bancorp went bankrupt.   After negotiations between Capitol's officers and the company's creditors during the bankruptcy process, Capitol created a Liquidation Trust to pursue the estate's legal claims.   The Liquidation Trustee sued Capitol's officers for $18.8 million, alleging they breached their fiduciary duties to the company.   Indian Harbor Insurance filed this lawsuit in response, seeking a declaratory judgment that the Trustee's lawsuit falls within the "insured-versus-insured" exclusion in Capitol's liability insurance policy. The district court agreed that the policy does not cover the Trustee's action, and so do we.

I.

A holding company incorporated in Michigan, Capitol Bancorp owned community banks in seventeen States.   Joseph Reid founded Capitol and served as its chairman and chief executive officer.   His daughter Cristin Reid served as president, her husband Brian English as general counsel.

The financial crisis was not good for Capitol.   Many of its banks took large losses as customers stopped repaying their loans.   The last time the company earned a profit was in 2007, and it accepted oversight by the Federal Reserve in 2009.   In 2012, Capitol and its subsidiary, Financial Commerce Corporation, sought to shed some debts and to repay other creditors on reduced terms—in short to reorganize—under Chapter 11 of the Bankruptcy Code.   With the bankruptcy filing, Capitol's assets became the property of the bankruptcy estate, and Capitol became the custodian of the estate, what Chapter 11 calls a "debtor in possession."   11 U.S.C. § 1101(1).   Soon afterward, the United States Trustee appointed a creditors' committee to represent the interests of Capitol's unsecured creditors.

Efforts to reorganize did not last long.   In 2013, Capitol decided to liquidate the company and submitted three proposed liquidation plans to the bankruptcy court, each with a provision that released the company's executives from liability.   The creditors' committee objected to these

provisions and asked the bankruptcy court to grant the Committee derivative standing to sue the Reids for breach of their fiduciary duties to Capitol. The court denied the motion.

The creditors and the debtor in possession, still under the direction of the Reids, returned to the negotiating table. In 2014, they agreed to a liquidation plan that required Capitol to assign all of the company's causes of action to a Liquidating Trust, which could pursue those claims on behalf of creditors. The plan stipulated that the Reids had no liability for any conduct after they filed the bankruptcy petition, and limited any pre-petition liability to amounts recovered from Capitol's liability insurance policy. The liquidation plan also required the Reids to sue Indian Harbor, the company's Delaware-based insurer, if it denied coverage under the management liability policy.

Capitol took out a one-year management liability insurance policy from Indian Harbor in September 2011, a year or so before it filed the bankruptcy petition. The company twice extended the policy after the bankruptcy proceedings began. Under the insurance contract, Indian Harbor agreed to pay for any "Loss resulting from a Claim first made against the Insured Persons"—a group that included Capitol's directors, officers, and employees—"during the Policy Period . . . for a Wrongful Act." R. 34-3 at 4–5. But the contract excluded from coverage "any claim made against an Insured Person . . . by, on behalf of, or in the name or right of, the Company or any Insured Person," except for derivative suits by independent shareholders and employment claims. *Id.* at 7, 25.

Many liability insurance contracts contain such insured-versus-insured exclusions. Not unlike a homeowners insurance policy that excludes coverage for a fire that the policyholder intentionally sets, these exclusions limit the management-liability insurance to claims by outsiders, prohibiting coverage for claims by people within the insured company. A company thus cannot hope to push the costs of mismanagement onto an insurance company just by suing (and perhaps collusively settling with) past officers who made bad business decisions. *See Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 670 (9th Cir. 2009).

In August 2014, the Liquidation Trustee, Clifford Zucker, sued the Reids for $18.8 million, alleging they breached their fiduciary duties to Capitol through a number of improper

actions. Cristin Reid resigned from the Trust's three-member Oversight Committee soon afterwards, claiming that Zucker failed to consult her before bringing the action.

Zucker notified Indian Harbor of the lawsuit against the Reids. Indian Harbor responded by filing this diversity action against Zucker and the Reids, seeking a declaratory judgment that it had no obligation to cover any damages from the lawsuit because the Trust's claims fell within the insured-versus-insured exclusion. The district court held that the exclusion applies. Zucker and the Reids appealed.

## II.

In resolving this dispute, the terms of the contract are a good place to start. The insured-versus-insured exclusion applies to claims "by, on behalf of, or in the name or right of, the Company or any Insured Person" against an Insured Person. Consider a simple application of this exclusion. Had Capitol sued the Reids for mismanagement, that would be a claim "by" the Company (an insured person) against its own officers (also insured persons). The exclusion would bar the claim, as both sides to this dispute agree.

Now consider today's fact pattern, one step removed from that example. The objects of the claim are the same (the officers) and so is the theory of liability (mismanagement). But the claimant is no longer the Company, which has assigned its rights to the Liquidation Trust. The outcome remains the same even so. As a voluntary assignee, the Trust stands in Capitol's shoes and possesses the same rights subject to the same defenses. *Burkhardt v. Bailey*, 680 N.W.2d 453, 462 (Mich. Ct. App. 2004). Just as the exclusion covers a lawsuit "by" Capitol, it covers a lawsuit "by" the Trust "in the . . . right" of Capitol.

Not so, urge Zucker and the Reids. When Capitol and Indian Harbor formed the insurance contract, they argue, "the Company" referred to Capitol in its pre-bankruptcy form. But Capitol underwent a transformation when it filed for bankruptcy. All of its assets, including all causes of action, became property of the bankruptcy estate, 11 U.S.C. § 541(a)(1), and Capitol became a debtor in possession administering the estate for the benefit of the creditors, *id.* §§ 1101(1), 1107; *see In re Wilcox*, 233 F.3d 899, 901 (6th Cir. 2000). As Zucker and the Reids

see it, a debtor in possession is legally distinct from "the [pre-bankruptcy] Company," making the insured-versus-insured exception inapplicable to Capitol or its assignee.

But this new-entity argument surely would not work *before* bankruptcy. Capitol could not have dodged the exclusion by transferring a mismanagement claim to a new company—call it Capitol II—for the purpose of filing a mismanagement claim against the Reids. No matter how legally distinct Capitol II might be, the claim would still be "by, on behalf of, or in the name or right of" Capitol.

The same conclusion applies to a claim filed *after* bankruptcy. Here too the voluntarily transferred claim would be filed "on behalf of" or "in . . . the right of" Capitol. The exclusion remains applicable by its terms.

Other terms of the contract resist the reading proposed by Zucker and the Reids. The "Change in Control" clause contemplates that coverage would continue uninterrupted during bankruptcy, even after the company became a debtor in possession. Any other interpretation would not make sense. If the company had a one-year policy from January 1 to December 31 and filed for Chapter 11 protection on July 1, the debtor in possession surely could seek coverage for insurable events during the second half of the year just as it could be denied coverage for excludable events during that period. But under the restricted definition of "the Company" urged by Zucker and the Reids, the policy would end up covering claims arising only from pre-bankruptcy conduct.

The relevant parties' actions are consistent with this reading of the contract. Capitol paid more than $3 million in total premiums to extend the policy—twice—after filing for bankruptcy.

The Bankruptcy Code does not alter this conclusion. It defines a Chapter 11 "debtor in possession" as the debtor, 11 U.S.C. § 1101(1), and defines "debtor" as "the person or municipality concerning which a case under this title has been commenced," *id.* § 101(13). "[T]he debtor in possession is the debtor, and the debtor is the person"—pre-bankruptcy Capitol—"that filed for bankruptcy." *Biltmore*, 572 F.3d at 671. The relevant bankruptcy provisions do not support Zucker and the Reids' contention that the debtor in possession and pre-

bankruptcy company are necessarily distinct legal entities—at least for purposes of the insurance contract.

Their reliance on the post-bankruptcy status of Capitol—as a debtor in possession—also runs into adverse precedent. The Supreme Court rejected the argument that a debtor in possession is a "wholly new entity" unbound by the pre-bankruptcy company's contracts. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984). The Court held that the company could reject a collective-bargaining agreement formed prior to bankruptcy because the statute authorizes debtors in possession to reject executory contracts, but noted that "if the [debtor in possession] were a wholly 'new entity,' it would be unnecessary for the Bankruptcy Code to allow it to reject executory contracts, since it would not be bound by such contracts in the first place." *Id.* The Court thought it "sensible to view the debtor-in-possession as the same 'entity' which existed before the filing of the bankruptcy petition." *Id.*

Other features of Chapter 11 confirm that we should treat the debtor in possession as the pre-bankruptcy company in the context of a contract that straddles the before and after of a bankruptcy filing. Chapter 11 permits going concerns to continue operating during bankruptcy in order to maximize the property available to satisfy creditors and, where possible, to return the business to solvency in a reorganized form. *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999); *see* William L. Norton, Jr., 5 *Norton Bankruptcy Law and Practice* § 91:1 (3d ed. 2008). The animating point is to keep the pre-bankruptcy company up and running. Rather than requiring an independent, court-appointed trustee to administer the bankruptcy estate for the benefit of the creditors, Chapter 11 gives the debtor in possession all the statutory powers and duties of a trustee. 11 U.S.C. § 1107(a). But there is one revealing exception: The debtor in possession need not investigate the debtor's financial condition or any improper conduct because "the debtor cannot be expected to inform on itself." *Norton* § 93:2; 11 U.S.C. § 1107(a). Zucker and the Reids do not come to grips with this distinction. Every case they invoke in support of their position involves a court-appointed trustee rather than an assignee from a Chapter 11 debtor in possession. If Capitol had successfully emerged from Chapter 11 bankruptcy, as Zucker's counsel (correctly) acknowledged at oral argument, it would once again be the same "Company" covered by the

contract.  How strange then to treat the debtor in possession as an entirely distinct entity for purposes of this insurance contract.

No doubt, we have remarked that the debtor in possession and the pre-bankruptcy debtor are legally distinct.  *See Gordon Sel-Way v. United States*, 270 F.3d 280, 290 (6th Cir. 2001).  But the distinction between the debtor and the bankruptcy estate better explains the principle we described in *Gordon Sel-Way*:  Because a debtor's assets and liabilities become the property of the bankruptcy estate as soon as the debtor files its petition, a debtor in possession cannot offset a pre-petition debt to a certain creditor (a liability that belongs to the estate) by forgiving a debt the same creditor has incurred post-petition (an asset that belongs to the debtor in possession).  *Id.* at 290.  When we considered the relationship between the debtor in possession and the pre-bankruptcy debtor more directly, we said that "[t]he debtor and the debtor-in-possession is one and the same person, although 'wearing two hats'"—representing its own interests as well as the interests of the bankruptcy estate—and held that district courts should not appoint separate counsel.  *Cle-Ware Indus., Inc. v. Sokolsky*, 493 F.2d 863, 871 (6th Cir. 1974).  Even if settings remain in which it makes good sense to treat the debtor and debtor in possession as legally distinct, this is not one of them.  *See Biltmore*, 572 F.3d at 672–73.

It makes no difference that the bankruptcy court approved the plan transferring the bankruptcy estate's causes of action from Capitol to the Liquidation Trust.  Zucker and the Reids may be right that court approval offers a safeguard against the collusive suits that insured-versus-insured exclusions seek to prevent.  But that does not eliminate the practical and legal difference between an assignee and a court-appointed trustee that receives the right to sue on the estate's behalf by statute.  The risk of collusion is surely higher when the insured individuals—the management of the debtor in possession—can negotiate and put conditions on a trustee's right to sue them.  *In re R.J. Reynolds*, 315 B.R. 674, 680 (Bankr. W.D. Va. 2003).  That a contractual term, like a statutory term, was designed to avoid certain problems does not mean that a fact-intensive search for that problem—here for collusion—must occur each time someone invokes the provision.  And it does not mean that collusion must be found before the provision applies.  We ask only whether "the Company" includes Capitol as debtor in possession.  The contract itself, together with core principles of bankruptcy law, confirms that it does.

Capitol's bankruptcy, it is true, created a new legal entity that is distinct from Capitol itself:  the bankruptcy estate.  And when Capitol filed for bankruptcy, it is also true, this breach-of-fiduciary-duty claim became property of the bankruptcy estate.  But this reality does not help Zucker and the Reids.  The bankruptcy estate is a nominal entity that cannot act on its own; it needs a debtor in possession or trustee to sue on its behalf.  *In re Lucre, Inc.*, 434 B.R. 807, 832 n.57 (Bankr. W.D. Mich. 2010).  A lawsuit by Capitol as debtor in possession on behalf of the bankruptcy estate remains a lawsuit "by" Capitol and thus would still fit within the insured-versus-insured exclusion.

The dissent says that the bar on coverage for claims "in the name or right of" Capitol is the only clause in the insured-versus-insured exclusion that plausibly applies to the Trust's suit. Not so.  As an assignee, the Trust stands in Capitol's shoes and is subject to the same defenses. Just as the exclusion would bar a suit "by" or "on behalf of" Capitol, it bars a suit by or on behalf of the Trust.  *See Biltmore*, 572 F.3d at 668, 671.  But the key point in the case is not which of the three clauses applies; it's whether Capitol as debtor-in-possession is still "the Company" that entered into the insurance contract.  For the reasons given above, we conclude that it is.

In truth, because the exclusion also applies to claims "in the . . . right of" Capitol, it's not even clear that a court-appointed trustee or creditor's committee could collect on the policy.  But today's decision does not resolve that distinct question.  On the one hand, one might think that any suit alleging a breach of fiduciary duty to Capitol is "in the right of" Capitol and therefore excluded.  If the parties meant to cover these lawsuits after bankruptcy, they could have included an exception for suits brought by bankruptcy trustees or creditor's committees, just as they included an exception for derivative shareholder suits.  On the other hand, one might say that the exclusion does not apply because the breach-of-fiduciary-duty claim became property of the bankruptcy estate the moment that Capitol filed for bankruptcy, meaning a court-appointed trustee or creditor's committee would sue "in the name or right of" the estate, not Capitol as debtor in possession.  *See In re Cent. La. Grain Coop., Inc.*, 467 B.R. 390, 398 (Bankr. W.D. La. 2012).  We need not take sides on this debate today.  We hold only that a voluntary assignee like the Trust, which stands in Capitol's shoes, brings a breach-of-fiduciary-duty suit "by, on behalf of, or in the name or right of" the debtor in possession.

For these reasons, we affirm.

————————————

**DISSENT**

————————————

BERNICE B. DONALD, dissenting.  I write separately to express my disagreement with the outcome of this case.  The assigned trustee in this case should have the same right to be exempt from the insured-versus-insured exclusion as a court-appointed trustee.  The plain language reading of the insurance contract in this case and Sixth Circuit precedent both support that finding.  Because this decision makes it harder for companies to emerge from bankruptcy with a consensual plan of reorganization, I respectfully dissent.

"The primary intent of the development of the 'insured vs. insured' exclusion was to prevent collusive lawsuits in which an insured corporation would in essence 'force' its insurer to pay for the poor business decisions of its officers and directors by the corporation filing an action against its own officers and directors."  Michael D. Sousa, *Making Sense of the Bramble-Filled Thicket: The "Insured vs. Insured" Exclusion in the Bankruptcy Context*, 23 EMORY BANKR. DEV. J. 365, 370 (2007).  Many cases cited by the majority have held that court-appointed trustees are exempt from the insured-versus-insured exclusion because there is no risk of collusion since a court-appointed trustee is a completely independent entity.  In fact, there is a split among "federal courts on the issue of whether a lawsuit against a corporation's former directors and officers brought by a debtor in possession, trustee, creditors' committee, or postconfirmation liquidating trustee triggers the 'insured vs. insured' exclusion in a directors and officers liability insurance policy."  *Id*.  Functionally, however, there is no distinction between an assigned trustee that a bankruptcy court has determined is independent and does not pose a risk of collusion, and one that is appointed by a bankruptcy court and is by nature of that appointment independent.  As the majority correctly noted, there are several cases that have determined a trustee does not fall under the insured-versus-insured exclusion, but all of those cases involve a court-appointed trustee rather than an assigned trustee as we have in this case.

However, there has been a move towards an examination of the plain language of the insured-versus-insured exclusion which some courts have similarly found should not extend to successors or assigns.  See *Alstrin v St. Paul Mercury Insurance Co.*, 179 F. Supp 2d 376 (D Del

2002); *In re Molten Metal Technology*, 271 B.R. 711 (Bankr. D Mass 2002); *Zurich American Insurance Co. v Boyes*, 2001 U.S. Dist. LEXIS 15123 (ND Tex 2001). The courts in each of these cases held that the plain language of the insured-versus-insured exclusion did not apply to claims by a trustee in bankruptcy or an estate representative, emphasizing that such claims "are not the same claims brought 'by' the Debtor under the exclusionary provision." *Alstrin*, 179 F. Supp 2d at 404. Specifically, the *Alstrin* court rejected the insurance company's argument that the insured-versus-insured exclusion applies to the estate representative because the company's estate and the company share the same identity. *Id*. Instead, the *Alstrin* court emphasized that the debtor's estate representative, by way of the debtor's estate, and the debtor are separate entities. Similar to *Alstrin*, the insured-versus-insured exception in *Molten Metal*s excluded coverage for claims "brought by any Insured or by the Company." However, the *Molten Metals* court noted that "Company" was "expressly defined to mean MMT [the insurance corporation] and its subsidiaries. The definition includes no reference to successors or assigns of any nature." 271 B.R. at 725.

If we look to the plain language of the insured-versus-insured exclusion in this case, we will find the same result. The relevant portion of the Insurance Policy provides,

> [t]he Insurer shall not be liable to make any payment for Loss in connection with any claim made against an Insured Person . . . (G) by, on behalf of, or in the name or right of, the Company or any Insured Person . . .

*Insurance Policy*, R. 34-3, Page ID # 474. This is a common provision in director and officer insurance policies that excludes coverage for any claim made by an insured person against another insured person or the Company.

The lawsuit brought by the Liquidation Trustee against Capitol's officers was not made "by the Company or any Insured Person" nor is it suggested that the suit is an action on "behalf of an Insured Person." Thus, the only remaining provision of the insured-versus-insured exclusion left to potentially bar coverage for the lawsuit against Capitol's officers pertains to actions brought in the "name or right of the Company." Both the plain language of the insured-versus-insured exclusion and established precedent in this Circuit do not support the majority's interpretation that the insured-versus-insured exclusion prohibits the Liquidating Trustee's lawsuit against Capitol's officers.

First, the plain language of the policy defines the term "Company" as:

the parent Company [i.e. Capitol Bancorp Ltd.] and any Subsidiary created or acquired on or before the Inception Date set forth in item 2 of the Declarations or during the Policy Period, subject to General Conditions VI(D).

*See Insurance Policy*, R. 34-3, Page ID #454 § II(D). The term Company, therefore, only includes "Capitol Bancorp, its Subsidiaries, and 216 entities affiliated with Capitol Bancorp, including community banks, real estate holding companies, and trust companies." R. 35, Page ID #549 ¶ 68. The plain meaning of the insured-versus-insured exclusion does not include a debtor-in-possession or other estate representative.[1] Therefore, if the Liquidating Trustee brings a suit on behalf of the debtor-in-possession, by the plain language of the insurance policy, it is not brought on behalf of the debtor company.

In fact, this Court has explained that a debtor company is not the same as a debtor-in-possession. In *Gordon Sel-Way v. United States*, this Court held that:

"[i]n Chapter 11 bankruptcy, the debtor files a petition for bankruptcy, becomes a debtor in possession, and thus succeeds to a set of statutorily defined powers and duties. The debtor in possession is considered to be a separate legal entity from the debtor himself."

270 F.3d 280, 290 (6th Cir. 2001).

This Court also held that a bankruptcy estate and a debtor are separate legal entities. *Frank v. Mich. State Unemployment Agency*, 252 F.3d 852, 853 (6th Cir. 2007) (adopting district court opinion holding that debtor and estate were separate entities in the context of preference actions); *Mgmt. Inv'rs v. United Mine Workers of Am.*, 610 F.2d 384, 392 (6th Cir. 1979) (holding that the estate, a separate legal entity, must formally abandon a claim in order for the claim to revest in the debtor).

Further, these holdings comport with fundamental principles of bankruptcy law. Although the majority contends that this "new-entity" argument would not work before bankruptcy, that is precisely the point. Upon filing a bankruptcy case, a new entity is in fact

---

[1]Further, it is a basic rule of insurance contracts that exclusion clauses in insurance policies are to be strictly construed against the insurer and in favor of the insured. *Farm Bureau Mutual Ins., Co. Stark*, 437 Mich. 175 (1991).

formed. Section 541 of the Bankruptcy Code provides that upon filing of a case, a separate bankruptcy estate is created. 11 U.S.C. § 541. Although this "new-entity" argument may seem unfair, this is precisely the reason that many companies file bankruptcy. Companies in bankruptcy are afforded certain rights in bankruptcy that they would not be afforded outside of bankruptcy, especially in the context of contracts.[2]

The implications of this distinction extend to the Liquidation Trust in the instant case. The settlement agreement transferred all causes of actions, including any claims against Capitol's officers, to a Liquidating Trust. The Liquidation Trust was created for the benefit of the creditors and not the debtor company. In denying the Directors' request for indemnification from the Liquidating Trust, the bankruptcy court in the underlying bankruptcy case recognized this distinction stating:

> It appears to this Court that movants are confused about the relationship between the Debtor and the Liquidating Trust. The Liquidating Trust was created by the Plan and the order confirming the Plan. **Debtor and the [Liquidating] Trust are separate legal entities, separate counsel, separate assets and separate duties.** To the extent movants here have a claim for indemnification, it would be against Debtors and not the [L]iquidating Trustee.

(emphasis added) *Indemnification Hearing Transcript*, R. 35-21, Page ID #1205-06. There is no question that the Liquidating Trust, and the Liquidation Trustee by association, are separate legal entities than the debtor company Capitol. This is one of the fundamental tenants of bankruptcy law.

It is not unreasonable for the parties in this action to believe that the Liquidating Trust is a separate legal entity than the debtor Capitol, and that the Liquidating Trust, through the Liquidating Trustee, can bring actions against the Capitol's officers that are covered by Indian Harbor. In fact, that is exactly what the parties bargained for. Case law supports the position

---

[2]It is a fundamental tenant of bankruptcy law that parties cannot contract away certain rights that are available when a company enters bankruptcy. In fact, bankruptcy law often overrides provisions of contracts, such as anti-assignment provisions and ipso facto clauses. An example of this is an anti-assignment clause in an insurance contract. Although anti-assignment clauses are not prohibited by state law and there may not be any ambiguity in the way the clause is drafted, when a company enters bankruptcy the clause is unenforceable because of the relevant provisions of the Bankruptcy Code. *See, e.g., In re Federal-Mogul Global Inc.*, 684 F.3d 355, 365-366 (3d Cir. 2012) (holding that insurance proceeds were assignable despite anti-assignment provisions in subject insurance policies); *W.R. Grace & Co.*, 475 B.R. at 199 (same).

that court-appointed bankruptcy trustee suits are exempt from the insured-versus-insured exclusion, because an independent liquidation trustee or liquidation committee is similarly situated, they should likewise be exempt.

Under the majority decision, if only court-appointed trustees are exempt from the insured-versus-insured exclusion, creditors would be required to reject any plan and instead seek appointment of a trustee in order to preserve the ability to obtain an insurance recovery. Moreover, the insurance company would be no better off as it would be left in the same position, having to defend the directors' claims.  Although there is case law that states that court-appointed trustees are exempt from the insured-versus-insured exclusion, that does not automatically mean that assignee trustees are not given the same exemption.  In fact, the majority states that that an assignee trustee is different than a court-appointed trustee but does not cite any case law, nor have I found any, that suggests that an assignee trustee does not have the right to the same exemption.

Therefore, it is important to consider the effects of the majority's determination that assigned trustees are not entitled to the same rights as court-appointed trustees.  If the majority's decision becomes settled precedent, this Court will send a clear message to creditors in chapter 11 proceedings that if claims against directors and officers are deemed to be of significant value and the plan proposes to put those claims into a trust, the creditors must not agree to a plan proposed or even agreed to by the debtor-in-possession.  Instead creditors will be required to seek the appointment of a bankruptcy trustee, where appropriate, or they will have to defeat the debtor-in-possession's plan and propose their own disclosure statement and plan.  The cost in terms of professional fees and judicial resources cannot be overstated, especially in light of the fact that there would be no practical difference to the insurance companies as they would still be required to defend the directors' and officers' claims.

Although, as the majority suggests, the risk of collusion is surely higher when the insured individuals can negotiate and put conditions on a trustee's right to sue them, that did not happen in this case.  The policy behind the insured-versus-insured exclusion (i.e. to prevent collusion between the directors and officers and the insured company) could be problematic if the trustee is not truly independent (as is intrinsically the case with a court-appointed trustee).  However that

only means that the independence of the trustee should be evaluated on a case-by-case basis. *See* 23 EMORY BANKR. DEV. J. at 371 (suggesting that the applicability of the insured-versus-insured exclusion depends on an examination of the facts of each case and the specific language of the directors and officers liability policy under consideration); *see also*, e.g., *In re Buckeye Countrymark, Inc.*, 251 B.R. 835, 839-41 (Bankr. S.D. Ohio 2000) (case doing same); *Fed. Ins. Co. v. Continental Cas. Co.*, 2006 WL 3386625 at *9-*20 (W.D. Pa. Nov. 22, 2006) (same); *Reliance Ins. Co. of Illinois v. Weis*, 148 B.R. 575, 579-83 (E.D. Mo. 1992) (same).

In fact, that is exactly what the bankruptcy court did here. The bankruptcy court determined that the bankruptcy plan, which was result of negotiations between all parties in which they agreed to transfer all potential claims against Capitol's officers to the Liquidation Trust to pursue on behalf of the creditors, was in good faith. Neither the bankruptcy court nor the district court found any evidence of collusion between the debtor company and the appointed Liquidation Trustee. Therefore, there is no reason that the assigned trustee in this case should trigger the insured-versus-insured exclusion. For those reasons, I respectfully dissent.