SUTTON, J., delivered the opinion of the court in which DAUGHTREY, J., joined. DONALD, J. (pp. 878-82), delivered a separate dissenting opinion.
OPINION
SUTTON, Circuit Judge.
Capitol Bancorp went bankrupt. After negotiations between Capitol’s officers and the company’s creditors during the bankruptcy process, Capitol created a Liquidation Trust to pursue the estate’s legal claims. The Liquidation Trustee sued Capitol’s officers for $18.8 million, alleging they breached their fiduciary duties to the company. Indian Harbor Insurance filed this lawsuit in response, seeking a declaratory judgment that the Trustee’s lawsuit falls within the “insured-versus-insured” exclusion in Capitol’s liability insurance policy. The district court agreed that the policy does not cover the Trustee’s action, and so do we.
I.
A holding company incorporated in Michigan, Capitol Bancorp owned community banks in seventeen States. Joseph Reid founded Capitol and served as its chairman and chief executive officer. His daughter Cristin Reid served as president, her husband Brian English as general counsel.
The financial crisis was not good for Capitol. Many of its banks took large losses as customers stopped repaying their loans. The last time the company earned a profit was in 2007, and it accepted oversight by the Federal Reserve in 2009. In 2012, Capitol and its subsidiary, Financial Commerce Corporation, sought to shed some debts and to repay other creditors on reduced terms—in short to reorganize— under Chapter 11 of the Bankruptcy Code. With the bankruptcy filing, Capitol’s assets became the property of the bankruptcy estate, and Capitol became the custodian of the estate, what Chapter 11 calls a “debtor in possession.” 11 U.S.C. § 1101(1). Soon afterward, the United States Trustee appointed a creditors’ committee to represent the interests of Capitol’s unsecured creditors.
Efforts to reorganize did not last long. In 2013, Capitol decided to liquidate the company and submitted three proposed liquidation plans to the bankruptcy court, each with a provision that released the company’s executives from liability. The creditors’ committee objected to these provisions and asked the bankruptcy court to grant the Committee derivative standing to sue the Reids for breach of their fiduciary duties to Capitol. The court denied the motion.
The creditors and the debtor in possession, still under the direction of the Reids, returned to the negotiating table. In 2014, they agreed to a liquidation plan that required Capitol to assign all of the company’s causes of action to a Liquidating Trust, which could pursue those claims on *375 behalf of creditors. The plan stipulated that the Reids had no liability for any conduct after they filed, the bankruptcy petition, and limited any pre-petition liability to amounts recovered from Capitol’s liability insurance policy. The liquidation plan also required the Reids to sue Indian Harbor, the company’s Delaware-based insurer, if it denied coverage under the management liability policy.
Capitol took out a one-year management liability insurance policy from Indian Harbor in September 2011, a year or so before it filed the bankruptcy petition. The company twice extended the policy after the bankruptcy proceedings began. Under the insurance contract, Indian Harbor agreed to pay for any “Loss resulting ■ from a Claim first made against the Insured Persons”—a group that included Capitol’s directors, officers, and employees—“during the Policy Period ... for a Wrongful Act.” R. 34-3 at 4-5. But the contract excluded from coverage “any claim made against an Insured Person ... by, on behalf of, or in the name or right of, the Company or any Insured Person,” except for derivative suits by independent shareholders and employment claims. Id. at 7, 25.
Many liability insurance contracts contain such insured-versus-insured exclusions. Not unlike a homeowners insurance policy that excludes coverage for a fire that the policyholder intentionally sets, these exclusions limit the management-liability insurance to claims by outsiders, prohibiting coverage for claims by people within the insured company. A company thus cannot hope to push the costs of mismanagement onto an insurance company just by suing (and perhaps collusively settling with) past officers who made bad business decisions. See Biltmore Assocs., LLC v. Twin City Fire Ins. Co., 572 F.3d 663, 670 (9th Cir. 2009).
In August 2014, the Liquidation Trustee, Clifford Zucker, sued the Reids for $18.8 million, alleging they breached their fiduciary duties to Capitol through a number of improper actions. Cristin Reid resigned from the Trust’s three-member Oversight Committee soon afterwards, claiming that Zucker failed to consult her before bringing the action.
Zucker notified Indian Harbor of the lawsuit against the Reids. Indian Harbor responded by filing this diversity action against Zucker and the Reids, seeking a declaratory judgment that it had no obligation to cover any damages from the lawsuit because the Trust’s claims fell within the insured-versus-insured exclusion. The district court held that the exclusion applies. Zucker and the Reids appealed.
II.
In resolving this dispute, the terms of the contract are a good place to start. The insured-versus-insured exclusion applies to claims “by, on behalf of, or in the name or right of, the Company or any Insured Person” against an Insured Person. Consider a simple application of this exclusion. Had Capitol sued the Reids for mismanagement, that would be a claim “by” the Company (an insured person) against its own officers (also insured persons). The exclusion would bar the claim, as both sides to this dispute agree.
Now consider today’s fact pattern, one step removed from that example. The objects of the claim are the same (the officers) and so is the theory of liability (mismanagement). But the claimant is no longer the Company, which has assigned its rights to the Liquidation Trust. The outcome remains the same even so. As a voluntary assignee, the Trust stands in Capitol’s shoes and possesses the same rights subject to the same defenses. Burk *376 hardt v. Bailey, 260 Mich.App. 636, 680 N.W.2d 458, 462 (2004). Just as the exclusion covers a lawsuit “by” Capitol, it covers a lawsuit “by” the Trust “in the ... right” of Capitol.
Not so, urge Zucker and the Reids. When Capitol and Indian Harbor formed the insurance contract, they argue, “the Company” referred to Capitol in its pre-bankruptcy form. But Capitol underwent a transformation when it filed for bankruptcy. All of its assets, including all causes of action, became property of the bankruptcy estate, 11 U.S.C. § 541(a)(1), and Capitol became a debtor in possession administering the estate for the benefit of the creditors, id. §§ 1101(1), 1107; see In re Wilcox, 233 F.3d 899, 901 (6th Cir. 2000). As Zucker and the Reids see it, a debtor in possession is legally distinct from “the [pre-bank-ruptcy] Company,” making the insured-versus-insured exception inapplicable to Capitol or its assignee.
But this new-entity argument surely would not work before bankruptcy. Capitol could not have dodged the exclusion by transferring a mismanagement claim to a new company—call it Capitol II—for the purpose of filing a mismanagement claim' against the Reids. No matter how legally distinct Capitol II might be, the claim would still be “by, on behalf of, or in the name or right of’ Capitol.
The same conclusion applies to a claim filed after bankruptcy. Here too the voluntarily transferred claim would be filed “on behalf of’ or “in ... the right of’ Capitol. The exclusion remains applicable by its terms.
Other terms of the contract resist the reading proposed by Zucker and the Reids. The “Change in Control” clause contemplates that coverage would continue uninterrupted during bankruptcy, even after the company became a debtor in possession. Any other interpretation would not make sense. If the company had a one-year policy from January 1 to December 31 and filed for.Chapter 11 protection on July 1, the debtor in possession surely could seek coverage for insurable events during the second half of the year just as it could be denied coverage for excludable events during that period. But under the restricted definition of “the Company” urged by Zucker and the Reids, the policy would end up covering claims arising only from pre-bankruptcy conduct.
The relevant parties’ actions are consistent with this reading of the contract. Capitol paid more than $3 million in total premiums to extend the policy—twice— after filing for bankruptcy.
The Bankruptcy Code does not alter this conclusion. It defines a Chapter 11 “debtor in possession” as the debtor, 11 U.S.C. § 1101(1), and defines “debtor” as “the person or municipality concerning which a case under this title has been commenced,” id. § 101(13). “[T]he debtor in possession is the debtor, and the debtor is the person”—pre-bankruptcy Capitol—“that filed for bankruptcy.” Biltmore, 572 F.3d at 671. The relevant bankruptcy provisions do not support Zucker and the Reids’ contention that the debtor in possession and pre-bankruptcy company are necessarily distinct legal entities—at least for purposes of the insurance contract.
Their reliance on the post-bankruptcy status of Capitol—as a debtor in possession—also runs into adverse precedent. The Supreme Court rejected the argument that a debtor in possession is a “wholly new entity” unbound by the pre-bankrupt-cy company’s contracts. NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). The Court held that the company could reject a collective-bargaining agreement formed prior to bankruptcy because the statute author *377 izes debtors in possession to reject execu-tory contracts, but noted that “if the [debtor in possession] were a wholly ‘new entity,’ it would be unnecessary for the Bankruptcy Code to allow it to reject ex-ecutory contracts, since it would not be bound by such contracts in the first place.” Id. The Court thought it “sensible to view the debtor-in-possession as the same ‘entity’ which existed before the filing of the bankruptcy petition.” Id.
Other features of Chapter 11 confirm that we should treat the debtor in possession as the pre-bankruptcy company in the context of a contract that straddles the before and after of a bankruptcy filing. Chapter 11 permits going concerns to continue operating during bankruptcy in order to maximize the property available to satisfy creditors and, where possible, to return the business to solvency in a reorganized form. Bank of Am. Nat’l Trust & Sav. Ass’n v. 203 N. LaSalle St. P’ship, 526 U.S. 434, 453, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999); see William L. Norton, Jr., 5 Norton Bankruptcy Law and Practice § 91:1 (3d ed. 2008). The animating point is to keep the pre-bankruptcy company up and running. Rather than requiring an independent, court-appointed trustee to administer the bankruptcy estate for the benefit of the creditors, Chapter 11 gives the debtor in possession all the statutory powers and duties of a trustee. 11 U.S.C. § 1107(a). But there is one revealing exception: The debtor in possession need not investigate the debtor’s financial condition or any improper conduct because “the debtor cannot be expected to inform on itself.” Norton § 93:2; 11 U.S.C. § 1107(a). Zucker and the Reids do not come to grips with this distinction. Every case they invoke in support of their position involves a court-appointed trustee rather than an as-signee from a Chapter 11 debtor in possession. If Capitol had successfully emerged from Chapter 11 bankruptcy, as Zucker’s counsel (correctly) acknowledged at oral argument, it would once again be the same “Compan/’ covered by the contract. How strange then to treat the debtor in possession as an entirely distinct entity for purposes of this insurance contract.
No doubt, we have remarked that the debtor in possession and the pre-bankrupt-cy debtor are legally distinct. See Gordon Sel-Way v. United States, 270 F.3d 280, 290 (6th Cir. 2001). But the distinction between the debtor and the bankruptcy estate better explains the principle we described in Gordon Sel-Way. Because a debtor’s assets and liabilities become the property of the bankruptcy estate as soon as the debtor files its petition, a debtor in possession cannot offset a pre-petition debt to a certain creditor (a liability that belongs to the estate) by forgiving a debt the same creditor has incurred post-petition (an asset that belongs to the debtor in possession). Id. at 290. When we considered the relationship between the debtor in possession and the pre-bankruptcy debt- or more directly, we said that “[t]he debtor and the debtor-in-possession is one and the same person, although ‘wearing two hats’”—representing its own interests as well as the interests of the bankruptcy estate—and held that district courts should not appoint separate counsel. Cle-Ware Indus., Inc. v. Sokolsky, 493 F.2d 863, 871 (6th Cir. 1974). Even if settings remain in which it makes good sense to treat the debtor and debtor in possession as legally distinct, this is not one of them. See Biltmore, 572 F.3d at 672-73.
It makes no difference that the bankruptcy court approved the plan transferring the bankruptcy estate’s causes of action from Capitol to the Liquidation Trust. Zucker and the Reids may be right that court approval offers a safeguard against the collusive suits that insured-versus-insured exclusions seek to prevent. But that *378 does not eliminate the practical and legal difference between an assignee and a court-appointed trustee that receives the right to sue on the estate’s behalf by statute. The risk of collusion is surely higher when the insured individuals—the management of the debtor in possession—can negotiate and put conditions on a trustee’s right to sue them. In re R.J. Reynolds, 315 B.R. 674, 680 (Bankr. W.D. Va. 2003). That a contractual term, like a statutory term, was designed to avoid certain problems does not mean that a fact-intensive search for that problem—here for collusion— must occur each time someone invokes the provision. And it does not mean that collusion must be found before the provision applies. We ask only whether “the Company” includes Capitol as debtor in possession. The contract itself, together with core principles of bankruptcy law, confirms that it does.
Capitol’s bankruptcy, it is true, created a new legal entity that is distinct from Capitol itself: the bankruptcy estate. And when Capitol filed for bankruptcy, it is also true, this breach-of-fiduciary-duty claim became property of the bankruptcy estate. But this reality does not help Zucker and the Reids. The bankruptcy estate is a nominal entity that cannot act on its own; it needs a debtor in possession or trustee to sue on its behalf. In re Lucre, Inc., 434 B.R. 807, 832 n.57 (Bankr. W.D. Mich. 2010). A lawsuit by Capitol as debtor in possession on behalf of the bankruptcy estate remains a lawsuit “by” Capitol and thus would still fit within the insured-versus-insured exclusion.
The dissent says that the bar on coverage for claims “in the name or right of’ Capitol is the only clause in the insured-versus-insured exclusion that plausibly applies to the Trust’s suit. Not so. As an assignee, the Trust stands in Capitol’s shoes and is subject to the same defenses. Just as the exclusion would bar a suit “by” or “on behalf of’ Capitol, it bars a suit by or on behalf of the Trust. See Biltmore, 572 F.3d at 668, 671. But the key point in the case is not which of the three clauses applies; it’s whether Capitol as debtor-in-possession is still “the Company” that entered into the insurance contract. For the reasons given above, we conclude that it is.
In truth, because the exclusion also applies to claims “in the ... right of’ Capitol, it’s not even clear that a court-appointed trustee or creditor’s committee could collect on the policy. But today’s decision does not resolve that distinct question. On the one hand, one might think that any suit alleging a breach of fiduciary duty to Capitol is “in the right of’ Capitol and therefore excluded. If the parties meant to cover these lawsuits after bankruptcy, they could have included an exception for suits brought by bankruptcy trustees or creditor’s committees, just as they included an exception for derivative shareholder suits. On the other hand, one might say that the exclusion does not apply because the breach-of-fiduciary-duty claim became property of the bankruptcy estate the moment that Capitol filed for bankruptcy, meaning a court-appointed trustee or creditor’s committee would sue “in the name or right of’ the estate, not Capitol as debtor in possession. See In re Cent. La. Grain Coop., Inc., 467 B.R. 390, 398 (Bankr. W.D. La. 2012). We need not take sides on this debate today. We hold only that a voluntary assignee like the Trust, which stands in Capitol’s shoes, brings a breach-of-fiduciary-duty suit “by, on behalf of, or in the name or right of’ the debtor in possession.
For these reasons, we affirm.
DISSENT