Westchester Fire Ins. Co. v Schorsch (2020 NY Slip Op 04627)





Westchester Fire Ins. Co. v Schorsch


2020 NY Slip Op 04627


Decided on August 20, 2020


Appellate Division, First Department


Renwick, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 20, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman, J.P.
Dianne T. Renwick
Barbara R. Kapnick
Ellen Gesmer
Cynthia S. Kern, JJ.


10099 651026/18 

[*1]Westchester Fire Insurance Co., Plaintiff-Appellant,
v
Nicholas S. Schorsch, et. al., Defendants-Respondents, Aspen American Insurance Co., et al., Defendants-Appellants.



Defendants appeal from orders of the Supreme Court, New York
County (O. Peter Sherwood, J.), entered May 16, 2019 and June 11, 2019, which, to the extent appealed from, granted the motions of defendants-respondents Nicholas S. Schorsch, Edward M. Weil, Jr., William Kahane, Peter M. Budko, and Brian S. Block (defendants insureds) for partial summary judgment on their first counterclaim alleging breach of contract with respect to the insurance coverage obligations of plaintiff-appellant Westchester Fire Insurance Co., defendant-appellant Aspen American Insurance Co., and defendant-appellant RSUI Indemnity Co. (collectively, Excess Insurers), declared Excess Insurers obligated to pay for all defense and indemnity costs incurred in an action pending in Delaware, and found defendants insureds entitled to attorneys' fees incurred in defending against the instant declaratory judgment action, and denied Excess Insurers' motions to dismiss defendants insureds' counterclaim for breach of contract.




O'Melveny & Myers LLP, Washington, DC (Jonathan D. Hacker, of the Maryland and District of Columbia bars, admitted pro hac vice, Allen W. Burton and Gerard A. Savaresse of counsel), for [*2]Westchester Fire Insurance Co., appellant.
Tressler LLP, New York (Kevin G. Mikulaninec, Courtney E. Scott and Kiera Fitzpatrick of counsel), for RSUI Indemnity Co., appellant.
Krantz & Berman, LLP, New York (Marjorie E. Berman of counsel), for Brian S. Block, respondent.
McKool Smith P.C., New York (Orrie A. Levy, Kenneth H. Frenchman and Robin L. Cohen of counsel), for Nicholas S. Schorsch, Edward M. Weil, Jr., William Kahane and Peter M. Budko, respondents.



RENWICK, J.


Plaintiff Westchester Fire Insurance Co. (Westchester) commenced this action seeking a declaration that it has no coverage obligations to defendants insureds, arguing primarily that the "insured versus insured" exclusion of a Directors and Officers (D & O) liability insurance policy, procured by RCS Capital Corporation (RCAP), bars coverage of claims asserted against defendants,[FN1] 1 RCAP's former directors and officers. Defendants insureds contend, among other things, that coverage exists under the bankruptcy exception to the insured vs. insured exclusion. The claims, herein, arose after RCAP's bankruptcy.
During the bankruptcy process, negotiations between RCAP and the company's creditors resulted in the bankruptcy court's approval of RCAP's Chapter 11 reorganization plan creating a litigation trust, labeled "Creditor Trust." The Creditor Trust was formed, pursuant to the reorganization plan, to pursue the bankruptcy estate's legal claims on behalf of the unsecured creditors, after RCAP's emergence from bankruptcy.[FN2] 2 Thus, post-confirmation the Creditor Trust sued RCAP's directors and officers alleging they had breached their fiduciary duties to the company. The directors and officers sought coverage under RCAP's D & O liability policy with Westchester. Westchester commenced this action in response, seeking a declaratory judgment that it has no coverage obligations.
This appeal raises an issue of apparent first impression of whether a D & O liability policy's bankruptcy exception, which allows claims asserted by the "bankruptcy trustee" or [*3]"comparable authority," applies to claims raised by a Creditor Trust, as a post-confirmation litigation trust, to restore D & O coverage removed by the insured vs. insured exclusion. For the reasons that follow, we find that the bankruptcy exception to the insured vs. insured exclusion, applies to restore coverage. Specifically, we interpret the broad language "comparable authority" to encompass a Creditor Trust that functions as a post-confirmation litigation trust, given that such a Creditor Trust is an authority comparable to a "bankruptcy trustee" or other bankruptcy-related or "comparable authority" listed in the bankruptcy exception.
Factual Background
RCAP is a wholesale broker-dealer and investment banking and advisory business with significant revenues generated during the relevant time period from services provided to AR Capital LLC. Directors and officers of RCAP formed AR Capital LLC to create and manage non-traded investment vehicles, primarily REITs.[FN1] 3 RCAP, through subsidiaries, was responsible for marketing and distributing, and providing other services, in connection with AR Capital LLC's investment products. At one point, AR Capital LLC was the largest creator and sponsor of REITs in the United States (see RCS Creditor Trust v Chorsch, 2017 WL 5904716, 2017 Del Ch LEXIS 820 [Del Ch 2017]).
Bankruptcy Proceedings
/i>
In 2014, a financial scandal, involving an entity connected to RCAP and AR Capital LLC, decimated their businesses, causing the value of RCAP's stock to plummet. Like many companies facing bankruptcy, RCAP recognized that a contentious and prolonged bankruptcy proceeding could result in significant losses to its business. As a result, RCAP negotiated a restructuring support agreement (RSA) with its unsecured creditors, including its largest creditor Luxor Capital Partners. In March 2016, RCAP filed for Chapter 11 bankruptcy in the Bankruptcy Court of Delaware, pursuant to the RSA. The RSA provided for the creation of a Creditor Trust that would be governed by a Creditor Trust Agreement (CTA).
On May 19, 2016, the bankruptcy court issued an order confirming the bankruptcy plan. The "Confirmation Order" incorporated the CTA and distinguished between different types of litigation assets. In relevant part, the Confirmation Order provided that the Creditor Trust, with respect to litigation assets, in accordance with Section 1123(b) of the Bankruptcy Code, shall retain and "may enforce, sue on, settle, or compromise . . . all Claims, rights, Causes of Action, suits, and proceedings . . . against any Person without the approval of the Bankruptcy Court [and] the Reorganized Debtors[]." The Confirmation Order further provided that based on the "totality of the circumstances," including "extensive, arm's-length negotiations," the bankruptcy plan was "proposed with the legitimate and honest purpose of accomplishing [a] successful reorganization[] and maximizing recoveries available to creditors."
Pursuant to the CTA, rather than all of RCAP's assets remaining with RCAP as the bankruptcy debtor or debtor-in-possession (DIP),[FN1] 4 under the default provisions of
Section 1141 of the Bankruptcy Code, certain assets were held free and clear of any creditor claims in the bankruptcy and vested in the Creditor Trust.[FN1] 5 The Creditor Trust, as a representative of the bankruptcy estate, was charged with liquidating and distributing those assets, outside of the bankruptcy proceeding, on behalf of the trust, and, importantly, for the benefit of RCAP's unsecured creditors. The CTA also provided that the Creditor Trust would be administered by a Trust Administrator, who would take direction from a Creditor Trust Board consisting of three Trustees chosen by creditors of RCAP.
Directors' and Officers' Primary and Excess Policies
/i>
Westchester issued an excess liability D & O policy to RCAP for the relevant period, April 2014 through April 2015. The policy is the seventh layer of policies over the primary policy issued by XL Specialty Insurance Company. The D & O policy provides $5 million of coverage in excess of $35 million of coverage in the primary policy and other levels of excess coverage, subject to applicable retention limits.
The primary policy insures RCAP as well as the individual defendants, since they were officers and directors of RCAP. As relevant here, the primary policy includes an insured vs. insured exclusion, eliminating coverage for "any Claim made against an Insured Person . . . by, on behalf of, or at the direction of the Company or Insured Person." An "Insured Person" is defined as "any past, present, or future director or officer . . . of the Company" and the term "Insured" includes the Company (RCAP) as the debtor. However, the insured vs. insured exclusion has a bankruptcy trustee exception, which restores coverage excluded under the insured vs. insured exclusion, for claims
"brought by the Bankruptcy Trustee or Examiner of the Company or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the Company." There is also a similar exception for claims brought by a "creditors committee" of the Company. Finally, the policy provides coverage for "Loss," defined as "damages, judgments, settlements . . . or other amounts . . . and Defense Expenses in excess of the Retention that the Insured is legally obligated to pay," and the policy covers "wrongful acts," defined as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by any Insured Person while acting in his or her capacity as an . . . Insured Person of the Company."
Creditor Trust Action and Denial of D & O Coverage
/i>
In March 2017, as aforementioned, the Creditor Trust brought suit in the Delaware Chancery Court against numerous parties, including defendants insureds, former directors and officers of RCAP, alleging they breached their fiduciary duty to RCAP for the benefit of AR Capital LLC (Creditor Trust Action) (see RCS Creditor Trust v Chorsch, 2017 WL 5904716, 2017 Del Ch LEXIS 820 [Del Ch 2017], supra). The complaint primarily challenges defendants insureds' use of their dual control of AR Capital LLC and RCAP to enrich themselves and their [*4]affiliate entities at the expense of RCAP's public stockholders (id.). After being named in the Creditor Trust Action, defendants insureds sought coverage and indemnification under RCAP's D & O liability insurance policy which, as indicated above, consisted of a primary policy issued by XL Speciality Insurance Company and numerous layers of similar, or follow form,[FN1] 6 excess policies subject to the terms and conditions of the primary policy. Once the primary policy and the first-through-fifth layer excess policies were exhausted through settlements in other cases, the sixth layer excess insurer (Scottsdale Indemnity Company) began advancing defense costs in the Creditor Trust Action.
In March 2018, as the sixth layer policy neared exhaustion, Westchester, the seventh layer insurer, issued a denial letter asserting that coverage for the Creditor Trust Action was barred on various grounds. Westchester claimed that because the Creditor Trust Action was brought on behalf of RCAP, coverage was barred under the insured vs. insured exclusion, excluding claims brought by or on behalf of one insured (here RCAP) against another insured (RCAP's own directors and officers). Westchester contended that none of the exceptions to the exclusion applied, including the bankruptcy exception. Westchester further claimed that the policy did not apply because defendants insureds in the Creditor Trust Action had acted in capacities other than their RCAP director and officer capacities.
Insurer's Declaratory Judgment Action and Insureds'
Counterclaim
Shortly after issuing its denial of coverage letter, Westchester initiated the instant action, seeking a declaration that it had no coverage obligations, because of the insured vs. insured exclusion or, alternatively, other policy exclusions. It subsequently amended the complaint to include the remaining excess insurers, Aspen (issuer of the eighth layer policy) and RSUI (issuer of the ninth layer). RSUI asserted crossclaims against defendants insureds, raising the same coverage defenses as Westchester. Defendants insureds answered and asserted counterclaims against Westchester and RSUI, asserting a first counterclaim for breach of contract with respect to the excess insurers' coverage obligations, a second counterclaim based on their bad faith breach, and a third counterclaim seeking a declaration of coverage and defense, as well as attorneys' fees.
In May 2018, Westchester and RSUI moved to dismiss, as relevant here, the first counterclaim, for breach of contract, pursuant to CPLR 3211(a)(1) and (a)(7). They argued that the court could determine, as a matter of law, that coverage was barred by the insured vs. insured exclusion, because the Creditor Trust Action is a claim brought "on behalf of" RCAP, by its assignee, against RCAP directors and officers, and the bankruptcy exception did not apply.
Defendants insureds opposed the motions, contending that the insured vs. insured exclusion did not apply to the claims brought by the Creditor Trust on behalf of the bankruptcy estate for the benefit of RCAP's creditors and, alternatively, that the Creditor Trust fit into the bankruptcy exception to the insured vs. insured exclusion providing coverage for claims brought [*5]by certain bankruptcy-related entities. Additionally, defendants insureds moved for partial summary judgment to dismiss Westchester's and RSUI's complaint asserting coverage defenses, for a declaratory judgment on the insurers' coverage and defense obligations, and for a judgment on their counterclaim for breach of contract.
Supreme Court denied plaintiffs excess insurers' motions to dismiss the counterclaims for breach of contract. Instead, Supreme Court granted partial summary judgment to defendants insureds on their counterclaim for breach of contract regarding defense, liability coverage, attorneys' fees, and costs of defense. This appeal ensued.
Discussion
/i>
In this case, whether Supreme Court correctly granted defendants insureds partial summary judgment on their counterclaim for breach of contract, on the coverage obligations, depends on whether the court correctly determined, as as matter law, that plaintiffs insurers have no viable defense against providing coverage. As a threshold consideration, we examine Supreme Court's determination that the insured vs. insured exclusion did not bar coverage in the underlying Creditor Trust Action, based on its finding that the bankruptcy exception, for claims brought by a bankruptcy trustee or a similar authority, applied to the claims bought by the Creditor Trust.
In an action for a judgment declaring the parties' rights under an insurance policy, this Court must be guided by rules of contract interpretation because "[a]n insurance policy is a contract between the insurer and the insured" (Bovis Lend Lease LMB, Inc. v Great Am. Ins. Co., 53 AD3d 140, 145 [1st Dept 2008]). Contract interpretation or construction is usually a court function (Hartford Acc. & Indep. Co. v Wesolowski, 33 NY2d 169, 172 [1973]; Broad St., LLC v Gulf Ins. Co., 37 AD3d 126, 130-131 [1st Dept 2006]). In attempting to resolve the parties' dispute regarding the proper interpretation of the term "comparable authorities" of the bankruptcy exception to the insured vs. insured exclusion, the court's initial task is to attempt to ascertain the parties' intent from the language of the insurance contract itself (State of New York v Home Indem. Co., 66 NY2d 669, 671 [1985]; see also 11 Richard A. Lord, Williston on Contracts § 32.2 [4th ed 1999]). In that context, the court must construe the policy as a whole; all pertinent provisions of the policy should be given meaning, with due regard to the subject matter that is being insured and the purpose of the entire contract (County of Columbia v Continental Ins. Co., 83 NY2d 618, 628 [1994]).
A provision in an insurance policy is ambiguous if it is subject to more than one reasonable interpretation (State of New York v Home Indem. Co., 66 NY2d at 671; Breed v Insurance Co. of N. Am., 46 NY2d 351, 355 [1978]). However, a court should read policy provisions to avoid ambiguities if the plain language of the contract permits (id.). Thus, ambiguity in policy language will not be found to exist merely because two conflicting interpretations may be suggested (see Broad St., LLC v Gulf Ins. Co., 37 AD3d at 131 ["A court [should not] disregard the provisions of an insurance contract which are clear and unequivocal or accord a policy a strained construction merely because that interpretation is possible"]; see also Maurice Goldman & Son, Inc. v Hanover Ins. Co., 80 NY2d 986, 987 [1992]). Rather, where the parties differ concerning the meaning of an insurance contract, the court will be guided by a reasonable reading of the plain language of the policy (id.; see also Automobile Ins. Co. of Hartford v Cook, 7 NY3d 131, 138 [2006] ["a reasonable insured under these circumstances would have expected coverage under the policy"]).
Applying these principles to the D & O policy here, we find that the exception for "the Bankruptcy Trustee or . . . comparable authority . . ." applies to restore coverage removed by the insured vs. insured exclusion. Initially, we reject defendants insureds' argument that we do not need to address the bankruptcy exception, because the excess insurers have not established their burden that the insured vs. insured exclusion is implicated as a threshold consideration to [*6]whether the exception restores D & O liability coverage. To the contrary, the presence of a provision in the D & O policy that the pre-petition debtor company, here RCAP, is an "insured" covered by the D & O liability policy's insured vs. insured exclusion, and the presence of an exception to the exclusion for claims brought on behalf of the estate by bankruptcy-related entities (bankruptcy trustee and comparable authorities), clearly indicates that in the absence of such a specific exception, the listed bankruptcy-related constituents would fall within the scope of the insured vs. insured exclusion and bar coverage for claims brought by successors-in-interest to the pre-petition debtor, such as RCAP here (see Indian Harbor Ins. Co. v Zucker, 860 F3d 373, 375 [6th Cir 2017]; Biltmore Assoc. LLC v Twin City Fire Ins. Co., 572 F3d 663, 670 [9th Cir 2009]).
Turning to the question of whether the exception for bankruptcy trustees and comparable authorities applies here to restore coverage removed by the insured vs. insured exclusion, we find that the pertinent clauses of the insured vs. insured exclusion and the bankruptcy exception, when read together, are unambiguous. Their plain language indicates no intent to bar coverage for D & O claims brought by the Creditor Trust, as a post-confirmation litigation trust. To begin, the policy included the crucial language brought "by or on behalf of" in the insured vs. insured exclusion and bankruptcy exception. Thus, the exclusion and exception both focused on the identity of the party asserting the claim, not on the nature of the claim being brought. Moreover, the policy included the debtor corporation, or DIP, as an insured under the insured vs. insured exclusion, but did not to include the DIP under the bankruptcy trustee and comparable authorities exception. Thus, when read together, the bankruptcy exception restores coverage for bankruptcy-related constituents, such as the bankruptcy trustees and comparable authorities, and the insured vs. insured exclusion precludes the possibility of a lawsuit by a company as DIP, or by individuals acting as proxies for the board or the company.
In other words, because the D & O policy covers the debtor in the insured vs. insured exclusion even in the advent of bankruptcy, the D & O policy allows the company when transformed into a DIP or debtor corporation upon the filing of the petition to retain its factual identity as far as the insured vs. insured exclusion is concerned. This is because, "[l]iterally, the debtor's management remains in possession of the estate's property [including cause of action against officers and directors] and remains responsible for managing the estate's financial affairs while the case is pending."[FN1] 7 Thus, the DIP is one and the same with the debtor corporation and necessarily acts in concert therewith.
The D & O claims here, however, are not prosecuted by the debtor corporation or by individuals acting as proxies for the board or the company. On the contrary, the D & O claims are prosecuted by the post-confirmation Creditor Trust, a separate entity.
In fact, pursuant to Bankruptcy Code 11 USC § 1123(b), the specific terms of the Chapter 11 plan and Creditor Trust Agreement both provide that the claims against the directors and officers will inure to the benefit of the corporation's unsecured creditors and exclude the debtor company from recovery of any benefit from the lawsuit. Furthermore, even though the D & O claims are transferred to a Creditor Trust pursuant to the debtor's proposed plan, the creditors selected the Creditor Trustees, which is comprised of the oversight creditor's committee. To be sure, the excess insurers are correct to assert that once a company is in bankruptcy, virtually any claim can be understood as asserted for the creditors. However, what makes a Creditor Trust [*7]"comparable" to a bankruptcy-related entity, seeking to recover funds for the creditors, is that the Trust is not merely a creditor. Rather, it is an entity and authority created as part and parcel of the bankruptcy reorganization proceeding, empowered by the bankruptcy court's order of confirmation to file D & O claims.
That the Creditor Trust must be viewed as a separate entity from the debtor finds support in the fact that such a litigation trust has standing to pursue post-confirmation D & O claims explicitly pursuant to the Bankruptcy Code. The authority to establish a post-confirmation litigation trust or estate representative to pursue causes of action is found in Section 1123(b)(3)(B) of the Bankruptcy Code. Although not a mandatory provision in a chapter 11 plan, a plan may nevertheless provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose" of any claim or interest belonging to the debtor or to the estate (11 USC § 1123[b][3][B]). Under 11 USC § 1123(b)(3)(B), a party other than the debtor or trustee (such as Creditor Trust here) that seeks to enforce a claim must show that (i) it has been appointed under a Chapter 11 plan; and; ii) it is a representative of the estate (see McFarland v Leyh [In re Tex. as Gen. Petroleum Corp.], 52 F3d 1330, 1335 [5th Cir 1995]).
Significantly, in determining whether, as the appointed party, the Creditor Trust's responsibilities qualified as a representative of the estate, the bankruptcy court's primary concern was whether a successful recovery by the appointed estate representative " would benefit the debtor's estate and, particularly, the debtor's unsecured creditors'" (Citicorp Acceptance Co. v Robison [In re Sweetwater], 884 F2d 1323, 1327 [10th Cir 1989] quoting Temex Energy, Inc. v Hastie & Kirschner [In re Amarex, Inc.], 96 BR 330, 334 [WD Okla 1989]). Following such a finding and upon confirmation, RCAP, as the proponent of the plan, became merely a reorganized debtor (rather than a debtor-in-possession) and, as such, could not exercise the powers granted to debtors-in-possession and trustees under the Bankruptcy Code (see USC § 1141[b]; Dynasty Oil & Gas, LLC v Citizens Bank [In re United Operating, LLC], 540 F3d 351, 355 [5th Cir 2008]). That power fell upon the Creditor Trust.
In addition to the plain language of the bankruptcy exception and the mandates of the Bankruptcy Code, there are other reasons informing our decision to reject the
excess insurers' position in this case. First, we perceive no valid rationale for excluding D & O claims from D & O coverage when asserted by a post-confirmation litigation trust where coverage would otherwise exist for identical claims asserted by a Chapter 11 trustee, liquidator or creditors' committee. The main rationale offered by the excess insurers for excluding D & O claims when asserted by the Creditor Trust in this context is that ownership of such claims is the result of a voluntary assignment by the debtor company, which itself cannot assert D & O claims covered by the D & O policy. The excess insurers argue that this raises concerns of collusion. However, to hold that vesting estate assets in the Creditor Trust is a mere contractual assignment would ignore that the Creditor Trust Agreement was drafted and executed in a Chapter 11 Bankruptcy proceeding to obtain confirmation of a reorganization plan. In that context, it would be unreasonable to interpret the "assignment" of the D & O claims to the Creditor Trust as just a contractual assignment. On the contrary, the vesting of assets from one entity to another accomplishes the goal of filing for bankruptcy, which is to automatically vest all properties of the estate in the DIP, until there is an order of the bankruptcy court confirming the reorganization plan of the debtor (see USC § 1141[b]).
Further, to hold that the bankruptcy exception does not apply to the Creditor Trust would ignore the rationale and purpose for the creation of a post-confirmation litigation trust. In a Chapter 11 reorganization plan, creation of a post-confirmation litigation trust allows an entity other than the debtor corporation to pursue the cause of action, and permits the reorganized debtor's management to focus on running its business, after emerging from bankruptcy. Often, [*8]"the claims transferred to the litigation trust are those that the existing management of the debtor is perceived as being reluctant to pursue."[FN1] 8 Also, like here, customarily, "the claims transferred to the litigation trusts are those brought against former directors or officers, or persons with whom the current directors have close ties."[FN1] 9
Likewise, the excess insurers' narrow interpretation of the term "comparable authorities," within the bankruptcy exception, ignores the economic reality of insolvency. The alternative to assigning the D & O claims to a post-confirmation Creditor's Trust is to assign them to a bankruptcy trustee, or other type of estate representative so it can pursue such claims, or to abandon them. Of course, an assignment of the claims to a pre-confirmation bankruptcy trustee, or other type of estate representative, would not exclude them from D & O coverage under the broad bankruptcy exception here. Alternatively, pursuant to the Bankruptcy Code (11 USC § 554), an abandonment of the claims would require that the plan proponent demonstrate that such claims are of inconsequential value, or that retaining the same would be burdensome. This standard is unlikely to be satisfied here where the claims against the directors and officers have been deemed by the unsecured creditors to be of significant value, and derivative standing could be conferred upon a creditors committee, which would also not be excluded from D & O coverage.1 [FN1] 0
Still, the excess insurers argue that if the parties intended a blanket exception, they would not have chosen the listed bankruptcy-related constituents. But the opposite is just as true. Had the parties intended that claims brought on behalf of creditors by the Creditor Trust be excluded from coverage by the insured vs. insured exclusion and not restored under the bankruptcy exception, they would have provided for that as a matter of contract. Instead, by including the undefined and open-ended phrase "comparable authority" into the D & O policy's bankruptcy exception, the parties created a broadly applicable exception with no clear limiting principles other than that there should be no coverage where the D & O claims are prosecuted by the DIP or by individuals acting as proxies for the board or the company. No amount of case law cited by the excess insurers can change the plain language of the D & O policy.
In any event, none of the cases relied upon by the excess insurers addressed the specific question here: whether the insured vs. insured exclusion bars coverage in the underlying D & O action given the exception applicable to bankruptcy trustees and comparable authorities. The excess insurers rely primarily upon Indian Harbor Ins Company v Zucker (860 F3d 373 [6th Cir [*9]2017]), and its progeny. Indian Harbor, however, is easily distinguishable because that case involved an insured vs. insured exclusion that contained no bankruptcy exception. Indian Harbor declined to read such an exception into the policy. In contrast, in this case, there is a bankruptcy exception explicitly applicable to bankruptcy trustees and comparable authorities, which we interpret to encompass a post-confirmation litigation trust pursuant to the broad "comparable authority" language of the exception.1 [FN1] 1
Finally, we reject the excess insurers' argument that a broad interpretation of the bankruptcy exception impermissibly renders the separate Creditor Committee exception meaningless. We recognize that both the Creditor Trust and Creditor Committee in a Chapter 11 proceeding could seek to obtain assets for creditors. However, the fact that the parties included a specific exception for the Creditor Committee and could have made it clear that the Creditor Trust was intended to be covered by the exception by using the broad "comparable authority" language in the Creditor Committee exception, does not mean that the Creditor Trust cannot be found to be encompassed by the broad "comparable authority" language as used in the bankruptcy exception.
While we agree with Supreme Court to the extent it determined that the insured vs. insured exclusion did not bar coverage in the underlying Creditor Trust Action, we find that Supreme Court should not have granted partial summary judgment to defendants insureds on their claim for breach of contract on the coverage obligations and in issuing the declaration of coverage. Material factual disputes remain as to the application of other coverage defenses. Specifically, the Creditor Trust Action may reveal that defendants insureds engaged in wrongdoing to benefit a separate entity, AR Capital LLC, while acting in their personal capacities, for which no coverage exists, rather than "solely" in their capacities as directors and officers (see National Union Fire Ins. Co. of Pittsburgh, Pa. v Jordache Enters., 235 AD2d 333 [1st Dept 1997], lv denied in part, dismissed in part, 90 NY2d 931 [1997]). There are also issues of fact as to whether the sole remedy in the Creditor Trust Action is the disgorgement of ill-gotten gains, which would not be insurable (see J.P. Morgan Sec. Inc. v. Vigilant Ins. Co., 21 NY3d 324 [2013]). Under the circumstances, it was premature for the court to declare that plaintiff excess insurers were obligated to pay for all indemnity costs incurred in an action pending in Delaware; it was also premature for the court to award defendants insureds attorneys' fees incurred in defending the declaratory judgment action.
While we find that there are issues fact as to certain coverage defenses, this holding does not require the vacatur of the declaration that plaintiffs insurers are obligated to pay for all defense costs incurred in defending the Credit Trust action pending in Delaware. In policies that provide for a duty to defend or a duty to advance defense costs to directors and officers, the duty arises "whenever the underlying complaint alleges facts that fall within the scope of the coverage" (Fed. Ins. Co. v. Kozlowski, 18 AD3d 33, 40 [1st Dept 2005]). A carrier's duty to defend and the duty to advance defense costs are triggered by the same allegations (id.). The duty to provide defense costs "must be construed broadly in favor of the policyholder," and "exists whenever a complaint against the insured alleges claims that maybe covered under the insurer's policy" (Kozlowski, 18 AD3d at 41).
Here, the policies issued by plaintiffs excess insurers provide a broad right to the provision of defense costs subject to repayment in the event and to the extent that the insured "shall not be entitled under the terms and conditions of this policy to payment of such loss." The policies further provide that the carrier will advance defense costs for any claim "prior to its final disposition." This Court's finding that the Creditor Trust Action "may reveal" that defendants insureds' claim is not covered necessarily means that there is a possibility of coverage under the policies for the advancement of defense costs for defendants insureds. Therefore, as a matter of law, defendants insureds are entitled to the advancement of defense costs with regard to the Credit Trust Action.
Accordingly, the orders of the Supreme Court, New York County (O. Peter Sherwood, J.), entered May 16, 2019 and June 11, 2019, which, to the extent appealed from, granted the motions of defendants-respondents Nicholas S. Schorsch, Edward M. Weil, Jr., William Kahane, Peter M. Budko, and Brian S. Block (defendants insureds) for partial summary judgment on their first counterclaim alleging breach of contract with respect to the insurance coverage obligations of plaintiff-appellant Westchester Fire Insurance Co., defendant-appellant Aspen American Insurance Co., and defendant-appellant RSUI Indemnity Co. (collectively, Excess Insurers), declared Excess Insurers obligated to pay for all defense and indemnity costs incurred in an action pending in Delaware, and found defendants insureds entitled to attorneys' fees incurred in defending against the instant declaratory judgment action, and denied Excess Insurers' motions to dismiss defendants insureds' counterclaim for breach of contract, should be modified, on the law, to deny defendants insureds' motion for partial summary judgment on their first counterclaim, to vacate the declaration that Excess Insurers are obligated to pay for indemnity costs incurred in [*10]the Creditor Trust Action, and to vacate the award of attorneys' fees incurred by defendants insureds in the instant action, and otherwise affirmed, without costs.
The Decision and Order of this Court entered herein on May 14, 2020 is hereby recalled and vacated (see M-1999, M-2133, M-2136 and M-2139 decided simultaneously herewith).
All concur.
Orders, Supreme Court, New York County (O. Peter Sherwood, J.), entered May 16, 2019 and June 11, 2019, modified, on the law, to deny defendants insureds' motion for partial summary judgment on their first counterclaim, to vacate the declaration that Excess Insurers are obligated to pay for indemnity costs incurred in the Creditor Trust Action, and to vacate the award of
attorneys' fees incurred by defendants insureds in the instant action, and otherwise affirmed, without costs.
Opinion by Renwick, J. All concur.
Friedman, J.P., Renwick, Kapnick, Gesmer, Kern, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: AUGUST 20, 2020
CLERK



Footnotes

Footnote 1: 1The individual defendants are Nicholas S. Schorsch, Edward M. Weil, Jr., William Kahane, Peter M. Budko, and Brian S. Block. They will be referred to collectively throughout the opinion as defendants insureds.

Footnote 2: 2The "Creditor Trust" is a type of post-confirmation litigation trust created to pursue a bankruptcy estate's causes of action prosecuted for the benefit of creditors after a debtor's reorganization plan has been accepted by the bankruptcy court. As here, bankruptcy-related parties often prefer to postpone litigation of such claims until after approval or confirmation of a Chapter 11 reorganization plan, thus, preserving such claims, held by the bankruptcy estate, for post-confirmation litigation. 

Footnote 1: 3A REIT (Real Estate Investment Trust) is a professionally managed company that mainly owns and operates income-producing real estate (see Theodore S. Lynn et al., Real Estate Investment Trusts 1011 [1991]).

Footnote 1: 4A debtor-in-possession (DIP) is an entity or corporation that has filed for Chapter 11 bankruptcy protection, but still holds property to which creditors have a legal claim under a lien or other security interest. A DIP may continue to do business using those assets, but is required to seek court approval for any actions that fall outside of the scope of regular business activities (see 11 USC § 1107[a] [rights, powers, and duties of debtor in possession]; see also In re International Yacht and Tennis, Inc. v Wasserman, 922 F2d 659 [11th Cir 1991]; Zilkha Energy Co. v Leighton, 920 F2d 1520 [10th Cir 1990]).

Footnote 1: 5Specifically, RCAP assigned to the Creditor Trust certain of its litigation claims, including the claim in RCS Creditor Trust v Chorsch (2017 WL 5904716, 2017 Del Ch LEXIS 820 [Del Ch 2017]), for which defendants insureds now seek coverage from plaintiff Westchester.

Footnote 1: 6 Where an insured purchases a primary insurance policy and "follow form" excess insurance policy, the follow form excess policy generally will contain the same basic provisions as the primary policy with the exception of those provisions that are inconsistent with the terms of the primary policy to which it follows form (Scott M. Seaman and Charlene Kittredge, Excess Liability Insurance: Law and Litigation, 32 Tort & Ins L J 653 [1997]).

Footnote 1: 7Jeff Ferriell & Edward J. Janger, Understanding Bankruptcy 143-150 [2007]; see also Michael D. Sousa, Making Sense of the Bramble-Filled Thicket: The "Insured vs. insured" Exclusion in the Bankruptcy Context, 23 Emory Bankr Dev J 365, 404 [2007].

Footnote 1: 8Paige Holden Montgomery and Casey A. Burton, An Introduction to Litigation Trusts, American Bar Association:
https://www.americanbar.org/groups/litigation/committees/commercial-business/articles/ 2013/an-introduction-to-litigation-trusts [Last accessed April 23, 2020]

Footnote 1: 9id.

Footnote 1: 10As a party in interest, a creditor has the right to request authority to pursue causes of action on behalf of the estate (see Louisiana World Exposition v Federal Ins. Co., 858 F2d 233 [5th Cir 1988]). A creditor may pursue claims on behalf of the estate when three requirements are satisfied: (1) the claim is colorable, (2) the debtor-in-possession has unjustifiably refused to pursue the claim, and (3) the creditor obtains approval to do so from the bankruptcy court (id. at 247).

Footnote 1: 11Where, unlike here, a D & O policy does not explicitly contain a bankruptcy exception, there is a split of authority at the federal level regarding the effects of a bankruptcy proceeding on the exclusion. The split is along the lines of whether a lawsuit brought against officers and directors by the various successors-in-interest to the pre-petition debtor, namely bankruptcy trustees, creditors committees or post-confirmation trustees, serves to trigger the insured vs. insured exclusion in a D & O liability policy. In the First, Eighth and Eleventh Circuits, for instance, the insured vs. insured exclusion bars coverage for lawsuits against former officers and directors by a confirmation plan committee or bankruptcy trustee (see e.g. Indian Harbor Ins. Co, 860 F3d at 375; Biltmore Assoc. LLC v Twin City Fire Ins. Co., 572 F3d at 670; National Union Fire Ins. Co. v Olympia Holding Corp., 1996 WL 33415761, 1996 US Dist LEXIS 22806 [ND Ga June 4, 1996]; Reliance Ins. Co. of Ill. v Weis, 148 BR 575 [ED Mo 1992], affd, 5 F3d 532 [8th Cir. 1993], cert. denied sub nom. Plan Comm. of Bank Bldg. & Equip. Corp. of Am. v Reliance Ins. Co. of Ill., 510 US 1117 [1994]). On the other hand, courts in the Second, Third, Sixth and Ninth Circuits have concluded that the insured vs. insured exclusion was not triggered in lawsuits brought by a bankruptcy trustee or other successors-in-interest against the former directors and officers for breach of fiduciary duty (see e.g. In re Palmaz Scientific, Inc., 2018 WL 3343597, *4-12 [Bankr WD Tex 2018]; Alstrin v St. Paul Mercury Ins. Co., 179 F Supp 2d 376 [D. Del. 2002]; Cohen v National Union Fire Ins. Co. [In re County Seat Stores. Inc.], 280 BR 319 [Bankr. SD NY 2002]; Rieser v Baudendistel [In re Buckeye Countrymark, Inc.], 251 BR 835 [Bankr SD Ohio 2000]; Pintlar Corp. v Fidelity & Cas. Co. of N.Y. [In re Pintlar Corp.], 205 BR 945 [Bankr D Idaho 1997]).